ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant,

v.

UNITED STATES of America et al., Appellees.

No. 22266.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1967.

Harold L. Ward, Miami, Fla., Fowler, White, Gillen, Humkey & Trenam, of counsel, Miami, Fla., for appellant.

Starr W. Horton, Alfred E. Sapp, Asst. U. S. Atty., Miami, Fla., Stephen R. Booher, Fort Lauderdale, Fla., Mallory H. Horton, Miami, Fla., William A. Meadows, Jr., U. S. Atty., S. D. Florida, for appellee.

Dale & Stevens, Fort Lauderdale, Fla., of counsel, for appellee Rose Cement Supply, Inc.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and FISHER, District Judge.

FISHER, District Judge:

This is an appeal from a judgment in favor of the United States against St. Paul Fire & Marine Insurance Company, which judgment denied recovery by St. Paul Fire & Marine Insurance Company against either of the third-party defendants, Stephen Messana and Rose Cement Supplies, Inc.

Rose Cement Supply, a partnership composed of Arthur J. Rose and Stephen Messana, employed Pedro Zugasti as a customs broker to import cement which was sold by the partnership to its customers.

Pedro Zugasti was principal and St. Paul Fire & Marine Insurance Company was surety on a bond required by the United States guaranteeing payment of duty imposed on the imported cement.

Nine consumption entries were filed by Zugasti with the government reflecting importation of cement by the partnership Rose Cement Supply. The government liquidated the consumption entries in 1962 and in respect thereof assessed additional import duties of $8,556.07, for which it brought suit in 1963 against both Zugasti and St. Paul.

Zugasti, although a party defendant, was never served with process. St. Paul with leave of the court, joined as third-party defendants Messana and the corporation, Rose Cement Supplies, Inc., which concern in 1961 purchased the assets and business of the partnership, Rose Cement Supply. Neither Rose nor Messana were share holders or officers of the corporation. The partner, Arthur Rose, died in 1962.

The third-party action brought by St. Paul against Messana and the corpora-

tion was based on the subrogation theory that if the government recovered against St. Paul then St. Paul in turn could recover from Messana the surviving partner of Rose Cement Supply and/or the corporation, Rose Cement Supplies, Inc.

St. Paul alleges four assignments of error:

1. The court erred in ruling that a surety is not subrogated to any rights of the principal connected with the claim sued upon.

2. The court erred in ruling that the government had no claim against the partnership to which St. Paul would be subrogated.

3. The court erred in finding from the evidence that all notices required by law to be mailed to Zugasti were in fact duly and properly mailed.

4. The court erred in finding from the evidence that Zugasti, St. Paul's principal, executed the consumption entries in question.

■ Finding no merit in assignments of error three and four, we affirm. The trial court adequately disposed of the contentions of the appellant in holding,

"Under the terms of said bond, St. Paul unequivocally bound itself to the United States to pay the full amount of duties and taxes found to be due on each of said consumption entries. St. Paul's affirmative defenses in regard to the necessary statutory notice requirements were clearly disproved by the evidence. The evidence reveals and the court finds that the merchandise was appraised and Zugasti was given written notice thereof by mail on Customs Form 4301. (Plaintiff's Exhibits Nos. 1A through 1I); that on July 10, 1962, the entries were liquidated in the total amount of $8,-556.07 due, and Bulletin Notice of Entries Liquidated, Customs Form 4333, was posted in a conspicuous place in the Customs House at Port Everglades by the Deputy Collector of Customs. (Plaintiff's Exhibits Nos. 1A through 1I and 2); that on July 10, 1962, Zu-

gasti was notified by mail on Customs Form 5107, Notice of Duty and Internal Revenue Tax Due, that said total amount of $8,556.07 was due on said entries. (Plaintiff's Exhibit No. 4); that on August 10, 1962, Zugasti and St. Paul were notified that said amount of $8,556.07 was due and unpaid and formal demand was made upon St. Paul for payment of said $8,-556.07, by registered mail on Customs Form 4619, Final Notice of Moneys Due. (Plaintiff's Exhibit No. 5); that no written protest was filed with the Office of the Collector of Customs, nor was the amount due paid.

"The Court concludes that pursuant to the terms of said bond, St. Paul is liable to the United States for the full amount due upon said entries, in the total amount of $8,556.07, plus interest at the rate of 6 percent per annum from July 10, 1962."

■■ We next consider the contention of the appellant that the trial court erred in not permitting St. Paul a recovery against third-party defendants. The question presented is whether or not St. Paul is subrogated to the rights and remedies of the government [creditor] on the one hand and also the principal Zugasti [debtor] on the other hand as against third-party defendant Stephen Messana, surviving partner of the partnership of Rose Supply and/or Rose Cement Supplies, Inc. We answer the question in the affirmative.

Maryland Casualty Co. v. United States, 1940, 32 F.Supp. 746, 754, 91 Ct.Cl. 203, holds:

"The right of subrogation extends not only to the rights and remedies of the creditor but also to those of the principal on the bond."

Considering first whether St. Paul may be subrogated to the rights of the principal Zugasti and thus be permitted to recover against the third-party defendant Messana; the trial court denied St. Paul this right on the theory that Zugasti was a customs broker rather than an agent and employee of the partnership, Rose Supply Company, and for

that reason held that St. Paul could not go beyond Zugasti.[1]

The evidence discloses that Zugasti was an employee of the partnership and was also acting in behalf of the partnership as a customs broker. It would appear that all equitable principles would dictate that Zugasti should be given the opportunity to make himself whole, since the partnership received the financial benefits from the sale of cement to its domestic market. Pearlman v. Reliance Ins. Company, (1962) 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190; Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Co., (C.A. 5th 1962) 303 F.2d 692, cert. den. 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276.

For St. Paul to bear the cost and expense of these import duties without being able to recoup from the partnership by being subrogated to the rights of Zugasti is unjust enrichment in every sense of the word, and the fact that St. Paul may or may not have dealt with Zugasti as a principal is totally irrelevant to the issue of whether St. Paul as surety is subrogated to the rights of Zugasti (debtor).

American Surety Co. v. Morton, (D.C., Ed.Ill., 1958) 22 F.R.D. 261, states at page 263,

"It is axiomatic that a surety is subrogated and succeeds to the right owned by the party whose obligation the surety becomes liable to pay."

We therefore hold that St. Paul being subrogated to the rights of Zugasti has a cause of action against the surviving partner Messana.

The trial court further held that St. Paul could not recover from the third-party defendants by being subrogated to the rights of the government [creditor], under the theory that the nominal consignee [Zugasti] was considered the owner and by statute 19 U.S.C. § 1483,[2] was the principal obligor under the bond; therefore, the surety discharging the debt of its principal to the government, would then become subrogated to the rights of the government against the partnership; and the government having no rights against the partnership, there are no rights to which St. Paul can be subrogated.[3] As authority for this position, the trial court cites the case of R. J. Saunders & Co. v. Vincent, 309 F.2d 65 (2nd Cir. 1962). The *Saunders* case was

1. "St. Paul took the position at the trial of this cause, and reasserts it now, that Zugasti was an agent for Rose Cement Supply. Then and now St. Paul claims that if Zugasti had paid the import taxes due the United States, he would have acquired a right to be reimbursed by his principal, Rose Cement Supply; and that when St. Paul pays Zugasti's obligation to the government, it should be subrogated to Zugasti's claim for reimbursement against his principal, Rose Cement Supply, and ultimately against Messana and Rose Cement Supplies, Inc. "Messana was a silent partner in the partnership of Rose Cement Supply, and Rose Cement Supplies, Inc., and is the corporate successor to said partnership. "To allow St. Paul a recovery on this theory would require a holding that St. Paul is entitled to be subrogated to the position of Zugasti whose performance it assured, and also to the position of the government, whose claim St. Paul is obligated to pay. "The doctrine of subrogation does not permit a surety to move into the shoes of the debtor, whose performance was assured; but rather it restricts the surety to the position of the creditor, whose claim has been paid by the surety. See, American Fidelity Co. v. Delaney, 114 F. Supp. 702, 711 (D.C.Vt.1953); 50 Am. Jur. *Subrogation* §§ 3 and 110 (1944). "Therefore, St. Paul as surety for Zugasti can be subrogated only to the government's rights against Rose Cement Supply. The government has no rights against Rose Cement Supply. See, R. J. Saunders & Co. v. Vincent, 309 F.2d 65 (2nd Cir. 1962). Hence there are no rights in the government to which St. Paul can be subrogated.

2. 19 U.S.C. § 1483 Consignee as owner of merchandise: (1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof.

3. Same as footnote one.

874

a situation where the surety was seeking subrogation priority in a bankruptcy proceeding involving the importer or ultimate consignee, on the basis of standing in the shoes of the government and the government claiming a statutory priority.[4] The court held that the surety would not be entitled to a subrogated priority but would have to be content with a general claim against the bankrupt estate.

Thus, the *Saunders* case holds that the subrogee does not enjoy the government's priority in the bankruptcy proceeding but does in fact have the rights of a general creditor.

 The government's method of enforcing the payment of import tax and choosing to go against the principal and its surety on the bond, and for tariff purposes considers the nominal consignee [Zugasti] the owner of the merchandise, would not change the general principle of law which permits the right of subrogation to extend to the rights of the creditor. Standard Oil Co. v. Kurtz, (Cir. 8 1954) 330 F.2d 178, 185; 50 Am.Jur., Sec. 49, page 714.

The United States could bring suit against the partnership if it chose to do so and the surety, standing in the shoes of the government [creditor] is not precluded from doing so.

St. Paul having discharged its obligation under the bond would be subrogated to both the rights of Zugasti [debtor] and the government [creditor] against Stephen Messana, surviving partner of the partnership, and the lower court's judgment denying St. Paul this right and recovery against third-party defendant Messana is Reversed and Remanded.

The trial court did not make findings as to the liability of the corporation, Rose Cement Company, Inc., since it was unnecessary to do so in view of the finding of no liability against the partnership and surviving partner, Messana. While we believe under the facts disclosed in the record no liability would lie against the corporation, full compliance having been made with the Florida Bulk Sales Act, whereby the corporation acquired the assets of the partnership free of all indebtedness except those specifically assumed, we do not pass upon this question and it will be the province of the trial court to make the proper fact determination under the evidence offered at a subsequent hearing.

For all of the reasons stated, the judgment of the trial court is Affirmed in part and is Reversed and Remanded in part, with further proceedings to be had in conformity with this opinion.