56 CCPA

**BASF COLORS & CHEMICALS, INC.,**
Appellant,

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5306.**

United States Court of Customs and Patent Appeals.

Feb. 6, 1969.

(Eugene F. Blauvelt, Howard Clare Carter, New York City, of counsel) Sharretts, Paley, Carter & Blauvelt, New York City, for appellant.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief Customs Section, Bernard J. Babb, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and KIRKPATRICK,* Judges.

ALMOND, Judge.

This is an appeal from the decision and judgment of the Second Division, Appellate Term, of the United States Customs Court, 59 Cust.Ct. 834, A.R.D. 228, affirming the decision and judgment of a single judge sitting in reappraisement proceedings, 57 Cust.Ct. 541, R.D. 11195. The merchandise involved consists of hexamethylenediamine (HMD) exported from West Germany in December 1961 and June 1963 and appraised at $1.83 per pound, net packed, on the basis of American selling price as defined in section 402a (e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 19 U.S.C. § 1401(e), on the ground that HMD is subject to the rate of duty for articles classifiable under paragraph 27(a) (3) (5) of the Tariff Act. Appellant contends that HMD is not provided for in said paragraph and is, therefore, not subject to appraisement on the basis of American selling price, but should be appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1401a(b).

The pertinent tariff provisions read as follows:

Par. 27. Coal-tar products:

(a) * * *

(3) all products, by whatever name known, which are similar to any of the products provided for in this paragraph or in paragraph 1651, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph or in paragraph 1651;

* * * * * *

(5) all the foregoing products provided for in this paragraph, not colors, dyes, or stains, color acids, color bases, color lakes, leucocompounds, indoxyl, indoxyl compounds, ink powders, photographic chemicals, medicinals, synthetic aromatic or odoriferous chemicals, synthetic resin-like products, synthetic tanning materials, or explosives, and not specially provided for in paragraph 28 or 1651 * * *.

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price * * * of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value * * *.

Par. 1651. Coal-tar products: * * * benzene * * * and all other materials or products that are found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this Act.

It was stipulated by the parties that, if the appraisement of the merchandise was properly based on American selling

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

price, then the appraised values are the correct dutiable values; and that if the merchandise is not covered by the provisions of paragraph 27, then the proper basis of value is export value, and the entered values are the correct dutiable values. It was conceded below by counsel for appellant that the imported HMD consists in substantial part of a product derived from benzene.

Appellant contends, however, that HMD does not have the molecular structure of benzene, being an aliphatic compound having an acyclic rather than the cyclic chemical structure of aromatic compounds; that the term "coal-tar products used in the heading of paragraphs 27 and 1651 embraces only products having the benzenoid ring structure; that since HMD does not have that, it is not covered by paragraph 27(a) (3), and further that it is not similar to any product provided for in paragraphs 27 and 1651.

The record further contains the testimony of three witnesses for appellant and several exhibits, the appellee not having introduced any evidence. A summary of the evidence made by the trial judge and quoted by the Appellate Term, reads:

> The imported product, HMD, is produced from benzene, a coal-tar product, and other substances; HMD is produced by the various steps set forth in exhibit 1. The structural formula for benzene contains three so-called double bonds separated from each other by three single bonds. This combination is known as a benzenoid ring or aromatic structure. HMD does *not* have this typical bond feature, but only single bonds and is known as a paraffinic or aliphatic structure. The reaction to benzene by the addition of hydrogen removes the double bonds

from the benzene formula, as is described on page 2 of exhibit 1. This changes the benzene or aromatic class of chemicals to the paraffinic or aliphatic class of chemicals, and remains aliphatic until and including the production of HMD.

The common characteristic of all articles listed and described in exhibit 8, which includes the articles named in paragraphs 27 and 1651, is that they contain the benzenoid ring as illustrated in exhibit 4, typical for aromatic chemicals. None of the articles so listed contains the exclusive single bond structure of HMD typical for paraffinic or aliphatic chemicals.

By the hydrogenation of benzene, the aromatic character is completely destroyed, producing cyclohexane which is aliphatic. This is depicted in the second diagram on page 2 of exhibit 1. Benzene is the first diagram shown on page 2 of exhibit 1 and contains the benzene ring. A paraffinic compound is not a coal-tar product as it lacks the characteristic feature of the aromatic ring which all benzenoid aromatic products or chemicals usually possess.

The trial judge found [1] as a fact, however, that not all products which are produced, obtained, or found naturally in coal tar are benzenoid products. He held that appellant had not established that HMD was not similar to any of the the products provided for in paragraph 27 or 1651; that the presumption that the appraiser had found that it was similar had not been overcome, and that the merchandise was properly appraised on the basis of American selling price. His opinion states:

> The showing of chemical differences in chemical formulae and changes from a benzenoid or aromatic chemical to a

---

[1]. Prior to deciding the merits of the case, the trial judge ruled on three questions raised by the appellee affecting the jurisdiction of the court. The judge treated appellee's contentions that the court was without jurisdiction as motions to dismiss and overruled them. On review, the Appellate Term held that the trial court was correct as to the jurisdictional question. The appellee has not raised those questions in this appeal. We are satisfied that we have jurisdiction to determine the merits of the case.

paraffinic or aliphatic chemical is not such a showing as will fully conform to the statute, paragraph 27(a) (3) providing for "products * * * which are *similar* to any of the products provided for in this paragaph or in paragraph 1651, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph or in paragraph 1651." [Emphasis trial judge.]

While on the record there is no doubt that HMD was obtained, derived, or manufactured in whole or in part from benzene, named in paragraph 1651, there is an utter lack of evidence with respect to *similarity* between HMD and the product provided for in paragraphs 27 and 1651, or contemplated by the so-called basket clause in paragraph 27(a) (3), *supra*. In this respect, substantial evidence is completely lacking. Showing chemical and/or scientific distinctions alone are insufficient to meet the statutory requirements. [Citations omitted.]

The Appellate Term, in affirming the trial judge, concluded first that HMD is not excluded from classification under paragraph 27(a) (3) merely because it does not have the benzenoid ring structure. The court reviewed the testimony of appellant's principal witness, Dr. Herman F. Mark, professor of organic chemistry at the Polytechnic Institute of Brooklyn, and fairly found, we believe, that it failed to establish a precise meaning for the term "coal-tar products" in that it indicated that many of the products which are understood to fall within the term have the benzenoid ring structure but that there are other products produced, obtained, or found in coal tar which do not.[2] The court then considered whether Congress in using the term "coal-tar products" in the Tariff Act of 1930 meant to refer only to cyclic organic chemicals having a benzenoid ring structure and found:

It is significant that the term "coal-tar products" is used as a heading in three paragraphs of the Tariff Act of 1930—paragraphs 27, 28, and 1651. Paragraph 27(a) (1) names a number of products, which according to the testimony herein, have the benzenoid ring structure. Such products are covered whether or not actually obtained from coal tar. Paragraph 1651 also names certain products and adds "and all other materials or products that are found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this act." According to the testimony herein, not all materials and products found in coal tar have the benzenoid ring structure. Thus the term "coal-tar products" used in the headings of paragraphs 27, 28, and 1651 must have been intended to be comprehensive enough to include products of the type found in or obtained, derived or manufactured from coal tar whether or not actually from coal tar or another source, and whether or not having the benzenoid ring structure. Each paragraph and subparagraph then selects from the mass of such materials and products of the one or ones which are intended to be classified thereunder.

This interpretation is in accord with the broad purpose of Congress which, as stated, was to encourage and protect the domestic coal-tar chemical industry and is in accord with the familiar rule that tariff terms are to be given their

---

2. Dr. Mark testified, in part:

    Q. In other words, although the heading under 27 is "Coal Tar Products" some of the articles may not be coal tar products, according to your testimony, and not all of the products, coal tar products are named in 27, is that correct? A. Yes.

    *   *   *   *   *   *

    Q. Now, can you tell us whether or not all the materials or products that are produced, obtained or found naturally in coal tar, whether they are benzenoid products? A. No.

    Q. They are not? A. Not all of them.

common rather than their scientific meaning.

Turning to the question of whether HMD is similar to any of the products provided for in paragraph 27 or 1651, the court stated:

> It is clear that HMD is similar in derivation to the products named in paragraphs 27 and 1651. It is similar in appearance to some of them. It has the same number of carbon atoms as the benzene from which it was derived. It is dissimilar in molecular structure, and plaintiff claims that as a consequence, it is also dissimilar in chemical properties and uses.
>
> \*　\*　\*　\*　\*　\*
>
> Nevertheless, in view of the purpose of Congress and the comprehensive language used in paragraph 27(a) (3), we are of the opinion that the dissimilarity in molecular structure alone does not take HMD out of that paragraph.

In holding that the evidence failed to overcome the presumption attaching to the appraisement that HMD was similar to one or more of the products mentioned in paragraphs 27 or 1651, the court found:

> In sum, plaintiff has introduced much detailed evidence on dissimilarity in molecular structure, but the testimony as to differences in other properties, uses, purposes, and applications is more general. It does show some differences in properties between aromatic and aliphatic compounds as classes, but Dr. Mark admitted that there were some overlapping cases. There is no evidence establishing whether or not HMD is in the overlapping category. While the difference in molecular structure may be of great importance to chemists, Congress was legislating in terms of commerce. Therefore, an important, if not the most important, factor is whether the difference in molecular structure indicates any wide difference in practical applications of the two classes of chemicals, and particularly whether

HMD has similar commercial uses to any of the products listed. On this point, the evidence is unsatisfactory.

Appellant advances substantially the same argument here upon which it relied below, the essence being that the common meaning of "coal-tar products" is the same as the commercial meaning and as the scientific meaning and includes only those products having a benzenoid structure. The evidence having established that HMD is not benzenoid, accordingly, it is urged, it is not a coal-tar product, is not provided for in paragraph 27(a) (3), is not similar to any of the products provided for in paragraphs 27 or 1651 and is not subject to appraisement upon the basis of American selling price.

We have considered and assessed the arguments of counsel but we must agree, however, with the Customs Court that HMD is a coal-tar product for the purposes of the Tariff Act of 1930. We are influenced, as was the court below, by what was said in Kuttroff, Pickhardt & Co., Inc. v. United States, 21 CCPA 332, T.D. 46864:

> We have in mind the history of the times, prior to and on the date of the enactment of the provisions here under consideration, and what Congress sought to accomplish by the legislation, all of which is so generally known as to require no recital here. It will be noted that the first words in said paragraphs 27 and 28 are "Coal-tar products:" and that following this term is a recital, in great detail, of the different articles and materials which it sought to bring within the paragraphs. A study of the two paragraphs and the act as a whole prompts the conclusion that Congress was anxious to include within the said paragraphs most, if not all, coal-tar products, except those which were provided for elsewhere in the act. To accomplish this purpose it named definitely a great number of articles and materials, and then, by several general, comprehensive catchall provisions, further greatly broadened and enlarged the scope of the paragraphs.

In Bakelite Corporation v. United States, 16 Ct.Cust.Appls. 378, T.D. 43117, it was said:

It follows, therefore, that the words "coal-tar products," which introduce the language of said paragraph 27, refer to materials or things produced from coal tar, such as are enumerated thereinafter. And this, we believe, is the meaning to be attached to it, wherever found in the paragraph. It is not reasonable to assume that the Congress had in mind any fine technical distinctions, such as men of science might draw, between chemical individuals and compounds and products.

While the quoted langauge was used, in each instance, with respect to paragraph 27 of the Tariff Act of 1922, we think it equally applicable to closely corresponding paragraph 27 of the 1930 Act.

We agree with the court that "the term 'coal-tar products' used in the headings of paragraphs 27, 28, and 1651 must have been intended to be comprehensive enough to include products of the type found in or obtained, derived, or manufactured from coal tar whether or not actually from coal tar or another source, and whether or not having the benzenoid ring structure."

On the question of similarity, we recall that in Plant Products Corporation v. United States, 44 CCPA 183, C.A.D. 658, this court said:

It is evident, therefore, that no hard and fast rule can be laid down, but that the exact degree of likeness required to constitute similarity in any particular case must be a matter of opinion based on consideration of the particular circumstances involved.

On the record presented, we are of the opinion that there is sufficient similarity between HMD and the products provided for in paragraphs 27 or 1651 to satisfy the requirements of paragraph 27(a)(3), and that appellant has failed to sustain its burden of showing that the appraiser erred.

The judgment of the Customs Court is, therefore, affirmed.

Affirmed.

KIRKPATRICK, J., took no part in the decision of this case.