**TOP FORM BRASSIERE MFG. CO., Ltd.**
**v.**
**UNITED STATES.**

R.D. 11770; Reappraisement R70/8722.
Entered at New York, New York.
Entry No. 16894, etc.

United States Customs Court.
May 1, 1972.

Serko & Sklaroff, New York City (Murray Sklaroff, and Stuart A. Ring, New York City, of counsel), for plaintiff.

L. Patrick Gray III, Asst. Atty. Gen. (James Caffentzis, New York City, trial atty.), for defendant.

RE, Judge:

Pursuant to Rule 4.7(b) (1) of this court defendant has moved to dismiss this appeal for reappraisement on the ground that plaintiff is not a proper party to this action and has no standing to file the appeal.

In each of the seven entries covered by this appeal, entry was made in the name of Beacon Shipping Co., Inc. (Beacon) as importer of record for the account of American Brassiere Corp. (American) which is listed on all the customs and commercial invoices as purchaser of the merchandise. The goods were appraised at a value exceeding the entered value and, in each instance, notice was sent to Beacon. Within 30 days thereafter, Top Form Brassiere Mfg. Co., Ltd. (Top Form), of Canada, filed the appeal for reappraisement of the seven entries at "the request of American Brassiere Corporation."

The formal warehouse entry (C.F. 7502) in entry 19084 declares that Beacon is the nominal consignee and that the "actual owner for customs purposes" is American.

In plaintiff's memorandum opposing the motion, it is noted that no explanation is given for the fact that the formal entry documents (C.F. 7501 or 7502) for the other six entries are missing from the court files.[1]

---

1. The merchandise, entered during 1968 and 1969, was appraised on June 9, 1970, and is subject to the provisions of section 501(a) which provided that every appeal for reappraisement "shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court."

Defendant, however, replies that the same declaration appears on all the entries. It attaches as "exhibits" purported copies of the missing entry papers, including carrier's certificates certifying Beacon to be the owner or consignee of the merchandise entered under entries 16894, 105457, and 107913. It also includes forms entitled "Request for Return of, and Receipt for Bill of Lading Used on Entry" which indicate that Beacon had entered the merchandise in entries 808180, 886947, 802624, and 19084 on the basis of duplicate bills of lading.

These copies are neither authenticated nor certified to be true copies of the original documents, nor has any explanation been given why the originals have not been produced. In the absence of any response or denial by plaintiff, for the purposes of this motion, the court will accept as true defendant's assertions that, the statement of the nominal consignee declaring American to be the actual owner, appears on all the entries.[2] It is likewise accepted as true that in each instance, entry was made by Beacon either on a carrier's certificate or a duplicate bill of lading.

No owner's declarations or superseding bonds are to be found among the papers forwarded to the court, and plaintiff does not allege that they were filed. In light of plaintiff's failure to respond to defendant's assertion that they were not filed, the court will proceed on the papers before it, and will assume that owner's declarations or superseding bonds were not filed.

As applicable to the entries at bar, section 501(a), Tariff Act of 1930, as amended, prior to its amendment in 1970 by Public Law 91–271, provided that "The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, * * *" and that "The decision of the appraiser, * * * shall be final and conclusive upon all parties unless a written appeal for a reappraisement is * * * filed by the consignee or his agent * * *." Since plaintiff's agency relationship to American is not disputed, the sole question presented is whether American is a "consignee" within the meaning of section 501(a).

For ready reference the pertinent provisions of the Tariff Act of 1930, as amended, and the Customs Regulations may be set forth as follows:

Tariff Act of 1930, as amended:

"Sec. 483. Consignee as owner of merchandise

For the purposes of this title—

(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof. The underwriters of abandoned merchandise and the salvors of merchandise saved from a wreck at sea or on or along a coast of the United States may be regarded as the consignees.

(2) A person making entry of merchandise under the provisions of subdivision (h) or (i) of section 484 (relating to entry on carrier's certificate and on duplicate bill of lading, respectively) shall be deemed the sole consignee thereof.

Sec. 484. Entry of merchandise

(a) Requirement and time.—Except as provided in sections 490, 498, 552, and 553 and in subdivision (j) of section 336 of this Act, and in subdivisions (h) and (i) of this section, the consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing under such regulations as the Secretary of the Treasury may prescribe. Such entry shall be made at the customhouse within five days, exclusive of Sundays and holidays, after the entry of the importing vessel or

---

2. Plaintiff relies on the possibility that the declaration of Beacon naming American as actual owner appears on the missing entries and claims that it is this declaration which gives American, or its agent, standing to file this appeal.

report of the vehicle, or after the arrival at the port of destination in the case of merchandise transported in bond, unless the collector authorizes in writing a longer time.

\*    \*    \*    \*    \*    \*

(c) *Production of bill of lading.*— The consignee shall produce the bill of lading at the time of making entry, except that—

\*    \*    \*    \*    \*    \*

(3) The provisions of this subdivision shall not apply in the case of an entry under subdivision (h) or (i) of this section (relating to entry on carrier's certificate and on duplicate bill of lading, respectively).

(d) *Signing and contents.*—Such entry shall be signed by the consignee, or his agent, and shall set forth such facts in regard to the importation as the Secretary of the Treasury may require \*  \*  \*.

\*    \*    \*    \*    \*    \*

(h) *Entry on carrier's certificate.*— Any person certified by the carrier bringing the merchandise to the port at which entry is to be made to be the owner or consignee of the merchandise, or an agent of such owner or consignee, may make entry thereof, either in person or by an authorized agent, in the manner and subject to the requirements prescribed in this section (or in regulations promulgated hereunder) in the case of a consignee within the meaning of paragraph (1) of section 483.

(i) *Entry on duplicate bill of lading.*—Any person may, upon the production of a duplicate bill of lading signed or certified to be genuine by the carrier bringing the merchandise to the port at which entry is to be made, make entry for the merchandise in respect of which such bill of lading is issued, in the manner and subject to the requirements prescribed in this section (or in regulations promulgated hereunder) in the case of a consignee within the meaning of paragraph (1)

of section 483, except that such person shall make such entry in his own name.

*Sec. 485.    Declaration*

(a) *Requirement—form and contents.*—Every consignee making an entry under the provisions of section 484 of this Act shall make and file therewith, in a form to be prescribed by the Secretary of the Treasury, a declaration under oath, stating—

\*    \*    \*    \*    \*    \*

(c) *Agents.*—In the event that an entry is made by an agent under the provisions of section 484 of this Act and such agent is not in possession of such declaration of the consignee, such agent shall give a bond to produce such declaration.

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee."

Customs Regulations, Section 8.18(d) :

"A consignee in whose name an entry is made who desires under the provisions of section 485(d), Tariff Act of 1930, to be relieved from direct liability for the payment of increased and additional duties shall file a declaration of the actual owner of the merchandise on customs Form 3347. If the consignee desires to be relieved also from the liability for the payment of such duties voluntarily assumed by him in the single-entry bond which he filed in connection with the entry or in his term bond against which the entry was charged, he shall file with the collector of customs within 90 days from the date of entry a superseding bond on customs Form 7601 of the

actual owner whose declaration on customs Form 3347 has been filed in accordance with section 485(d) and these regulations. The filing of the owner's declaration and of the superseding bond by the nominal consignee is optional and no bond shall be required for the production of either. Neither the owner's declaration nor the superseding bond shall be accepted unless filed by the nominal consignee or his duly authorized agent. * * * "

It is defendant's position on this motion that the "consignee" under the tariff laws, and his statutory right to obtain judicial redress, is based upon his liability to the government for payment of customs duties. It maintains that where goods are entered by an importer as nominal consignee for the account of the "actual" owner or ultimate consignee, and no owner's declaration and superseding bond are filed pursuant to section 485(d) and Customs Regulations, section 8.18(d), then, by virtue of sections 483, 484 and 485, it is not the "actual" owner or ultimate consignee but the importer of record who is liable for the duties who is the consignee under the tariff laws. Accordingly, absent a showing that plaintiff acted as agent for the consignee, Beacon, it had no valid authority to file the appeal. For judicial authority for its contention, defendant cites Hersey of Canada, Ltd. v. United States, 60 Cust.Ct. 942, A.R.D. 234 (1968), affirmed, 406 F.2d 1394, 56 CCPA 64, C.A.D. 955 (1969), and Wilmington Shipping Company v. United States, 52 Cust.Ct. 650, A.R.D. 175 (1964), affirmed, 52 CCPA 76, C.A.D. 861 (1965).

In the *Wilmington* case, United Plywood Co., the foreign seller and shipper, had contracted with the American purchasers to pay the customs duties. The question presented was whether, on the basis of its contractual liability, it could properly file an appeal for reappraisement as the "consignee" or "his agent" under section 501. More specifically the question was whether it could do so although the forwarder, Wilmington Shipping Company, had entered the merchandise as importer of record for the account of the American purchasers, and was also listed on the carrier's certificates as owner or consignee of the merchandise. Wilmington had declared itself the nominal consignee, naming the American buyers as the owners. However, no owner's declarations were filed, and notices of appraisement were given to Wilmington.

The Appellate Term of the Customs Court affirmed the trial court's finding that the foreign seller was not a party authorized by statute to file a reappraisement appeal, and concluded that a reading of section 501, in conjunction with sections 483 and 484, made it clear that the term "consignee" had the same meaning in all three provisions. Specifically, the Appellate Term held that section 501 was intended to provide a judicial forum only for those who were obligated by statute to the government for the payment of duties, irrespective of any private agreement between the parties concerning such payment. The court stated:

"It is abundantly clear on these facts that Wilmington Shipping Company and not United Plywood Co. is the 'consignee' of the merchandise at bar within the meaning of 19 U.S.C.A., sections 1483 and 1484(h) (sections 483 and 484(h), Tariff Act of 1930), which controlled the manner in which entry was made herein. Section 1501, *supra,* as noted herein, limits the right of instituting reappraisement proceedings to consignees and their agents. And sections 1483 and 1484(h), *supra,* define the persons who constitute consignees for the purpose of making entry of merchandise herein. It is not to be supposed that the term 'consignee,' as used in sections 1483 and 1484(h), *supra,* has any different meaning than that attached to its use in section 1501, *supra.* These statutes must be read together to enable one to grasp the impact of the term 'consignee,' as it relates to reappraisement proceedings. It is obvious that Congress intended to pro-

vide, in section 1501, *supra,* a judicial forum for the adjustment of grievances of those, among others, who become indebted to the Government for customs duties and taxes by reason of the importation and entry of merchandise pursuant to sections 1483 and 1484(h), *supra.* Hence, a contractual obligation between parties respecting the payment of duties is of no significance in determining whether an interested party is a consignee. Only a statutory obligation for the payment of duties has any relevancy for such purpose. And under the involved statutory criteria neither the foreign seller nor the American purchaser of the merchandise at bar can be regarded as the consignee, since neither of these interested parties was indebted to the Government for customs duties. The role of the appellant in entering the merchandise on the carrier's certificate and on its own declaration as consignee and in taking possession of the merchandise upon its release from customs custody makes it solely responsible to the Government for the payment of duties on such merchandise." 52 Cust.Ct. at 654–655.

In support of its holding the Appellate Term quoted from the case of Baldwin v. United States, 2 Cir., 113 F. 217 (1902), certiorari denied, 184 U.S. 700, 22 S.Ct. 939, 46 L.Ed. 765 (1902), where the court sustained the liability of the forwarding agent to the Government for additional duties, stating:

"The government is not called upon to hunt up any ultimate consignee, when there is a primary consignee to whom the goods are sent, and who himself presents the invoice, makes the entry, receives the bill of lading, and gets the goods; thus being himself their 'importer.'" 113 F. at 218.

The Appellate Term therefore concluded:

"It follows that the right to institute and maintain reappraisement proceedings affecting the entries at bar devolved exclusively upon the ap-

pellant by reason of such liability. And it was consistent with such right for the collector to have given notices of appraisement to the appellant rather than to any of the other interested parties." 52 Cust.Ct. at 655.

In affirming the decision of the Appellate Term the Court of Customs and Patent Appeals stated:

"While recognizing that statutes giving the right of appeal are liberally construed, we are unable to conclude that the interpretation of section 501 which appellant seeks here is warranted. Wilmington Shipping Company clearly and admittedly was the consignee of the merchandise and was *solely responsible to the Government for the payment of duties on it.* United Plywood was the importer or seller and its contractual liability to the purchasers obviously does not change its status to that of consignee." [Emphasis added.] 52 CCPA at 79.

The appellate court also agreed that there was nothing in the record to indicate that the foreign seller had been authorized to act as agent for the consignee.

In the *Hersey* case the question presented pertained to the legal capacity of the exporter, owner, and consignor, Hersey of Canada, Ltd., to file appeals for reappraisement as agent of the ultimate consignee, Sazu Corporation of New York. In *Hersey* the customs broker, F. W. Myers & Co., Inc., had entered the merchandise as importer of record and as the nominal consignee, and named Sazu as ultimate consignee. No owner's declaration was filed.

At the trial, the president of Sazu tried to establish that she had authorized Hersey to file the appeals as agent of her corporation. Having found that the record lacked clear and convincing evidence of the agency appointment by the ultimate consignee, the trial judge dismissed the appeals. The Appellate Term agreed and affirmed the judgment of dismissal. It also declared that Sazu as ultimate consignee, was not liable to

the government for the duties, and therefore, was not a consignee in the tariff sense. The court noted that "a consignee in a commercial sense is not, without more, a consignee in a tariff sense." Hersey of Canada, Ltd. v. United States, 60 Cust.Ct. at 945. Having no authority to file the appeals, Sazu could not legally appoint someone else to file them as agent.

The Court of Customs and Patent Appeals affirmed on the ground that Hersey had failed to establish that it was the agent of Sazu, but found it "unnecessary * * * to determine whether Sazu could properly have filed an appeal directly in its own name." 56 CCPA at 66.

In the case at bar plaintiff agrees that whatever right American, or its agent, may have to file this appeal is predicated upon American's liability to the government for payment of the duties. It urges that, having been named as "actual" owner by the nominal consignee, it became obligated to pay the duties and, therefore, acquired the right to file the appeal. Plaintiff distinguishes the *Hersey* and *Wilmington* decisions since those appeals were not filed by the acknowledged agent of the "actual" owner.

A study of the pertinent legislation reveals that the terms "importer," "owner," and "consignee", when used in the tariff laws, have somewhat different meanings than when used in a purely commercial sense. These distinctions are historic. For example, merchandise imported into the United States has long been deemed, under the various tariff statutes, to be the property of the person to whom it was consigned. As a consequence, the Supreme Court, in Meredith et al. v. United States, 38 U.S. 486, 493 (13 Pet.), 10 L.Ed. 258 (1839), held that

"duties due upon all goods imported constitute a personal debt due to the United States from the importer, (and the consignee for this purpose is treated as the owner and importer,) independently of any lien on the goods, and any bond given for the duties."

The provision holding the consignee liable as owner, which has been the law since 1799, was enacted for the purpose of preventing fraud upon the government arising from collusive transfers. Lafontan v. Elting, 2 Cir., 54 F.2d 664 (1931). It also relieves the government from the problems which face a collection agency in having "to hunt up any ultimate consignee, when there is a primary consignee * * *," Baldwin et al. v. United States, 2 Cir., 113 F. 217, 218 (1902), or from having to determine which party is contractually liable for the duties. See also United States v. Vandiver, 9 Treas.Dec. 191, 3 Cir., 133 F. 252, T.D. 26036 (1904); J. M. Colpas v. United States, 17 Treas.Dec. 280, T.D. 29663 (1909); Blumenthal Print Works v. United States, D.C., 51 F.Supp. 208 (1943), affirmed 5 Cir., 141 F.2d 211 (1944).

The foregoing cases highlight the primary obligation of the statutory owner and consignee. Apart from the *Wilmington* and *Hersey* Appellate Term opinions, however, they have not addressed themselves directly to the issue raised by plaintiff—whether there is some ultimate residual obligation of the "actual" owner to the government for payment of duties solely by virtue of his ownership.

The opinions on this precise issue are few and diverse. In R. J. Saunders Co., Inc. v. Vincent, 309 F.2d 65 (2d Cir. 1962), appellant, a customs broker, entered merchandise as nominal consignee and importer of record for the ultimate consignee which later went bankrupt. No owner's declaration was filed. The broker subsequently paid additional duties to the government pursuant to its obligation as principal under its surety bond, and then sought a subrogation priority as surety in the bankruptcy proceeding. The court accorded Saunders the rights of a general creditor, but noted that there was "a question whether the bankrupt remained liable for the duties involved here, even though appel-

lant by its bond undertook such liabil-, ity." It added that "The statute is silent on this point." 309 F.2d at 67.

In St. Paul Fire & Marine Insurance Co. v. United States, 370 F.2d 870 (5th Cir. 1967), the customs broker entered merchandise as nominal consignee and importer of record for the ultimate consignee, a partnership. The government subsequently sued the broker as principal, and appellant as surety, on their bond for additional duties. St. Paul joined a partner and a corporation which had purchased the assets of the partnership, claiming that it was subrogated to the rights of the government-creditor and the broker against the partnership. The district court held that St. Paul was liable on the bond but, since the nominal consignee was deemed the owner under section 483, and was the principal obligor under the bond, the government had no rights against the partnership-ultimate consignee. Consequently, there were no rights to which St. Paul could be subrogated.

The circuit court, reacting to what it considered to be an unjust enrichment reversed the trial court and held that, although the government chose to go against the principal and surety on the bond, this did not change the general principle of law permitting the right of subrogation to extend to the rights of the creditor. The court concluded:

> "The United States could bring suit against the partnership if it chose to do so and the surety, standing in the shoes of the government [creditor] is not precluded from doing so." 370 F.2d at 874.

In Erskine v. United States, 84 F.2d 690 (9th Cir. 1936), it was held that the liability of customs brokers, who entered merchandise as importers of record and nominal consignees, shifted to the actual owner and nominal consignee only upon the proper signing of the owner's declaration by the owner. Thus, where the consignee declared a corporation to be the actual owner of imported merchandise, but the owner's declaration was signed by the corporation's president as an individual, the court held that the president was not liable to the government for the duties as there was no consideration for the agreement. It was also noted that if the president had signed as agent for the corporation, then the agreement would be binding on the latter. Under this rationale, liability of the actual owner to the government would depend upon the validity of the owner's declaration, not upon the fact of ownership.

In E. H. Corrigan v. United States, 35 CCPA 10, C.A.D. 364 (1947), the court discussed the legal consequences of the provision in section 485(d) that "such owner shall possess all the rights of a consignee." Corrigan, the customs broker and consignee, had entered merchandise on behalf of the actual owners, paid additional duties upon the collector's demand, and then successfully petitioned the court for remission of these duties. Subsequently, he protested the collector's refusal to pay him the refunds. The court, noting that owner's declarations were filed within the 90-day period specified in section 485(d), held that Corrigan, having filed the owner's declarations, had divested himself of any right to claim that he was entitled to the refunds. In the words of the court:

> "The owners, therefore, became responsible for additional duties 'under such regulations, as, the Secretary of the Treasury may prescribe,' and the owners became possessed of all the rights of the consignee." 35 CCPA at 17.

In Waterbury Lock & Specialty Co. v. United States, 17 Cust.Ct. 87, C.D. 1025 (1946), plaintiff filed a protest against a reliquidation of an entry by the collector pursuant to section 521. Naming plaintiff as actual owner, customs brokers entered the merchandise as importers of record, and declared that they were the nominal consignees. No owner's declaration was filed. Plaintiff was also listed in the invoice as purchaser. Under section 514, protests may be filed by the "importer, consignee, or agent of the person paying such charge or exaction."

Defendant moved to dismiss the protest on the ground that plaintiff was not a proper party to the action as the merchandise had actually been imported for other parties who, in a separate action, had pleaded guilty in the district court to an indictment for conspiracy to defraud the government in connection with the entry of the merchandise. The court denied the motion and held that plaintiff, designated in the invoice as purchaser and in the broker's declaration as actual owner, was a proper party to file the protest under section 514.

In affirming the ruling denying the motion to dismiss, the appellate court stated:

> "Basing its action on the ground that appellee was named in the invoice as the importer of the goods, and that it had received and caused them to be entered, the trial court held that on the face of the entry papers presented to the collector, appellee had the liability of a consignee and was a proper party to file the protest here in issue." United States v. Waterbury Lock & Specialty Co., 35 CCPA 131, 135, C.A.D. 384 (1948).

The appellate court's use of the term "consignee" is unfortunate since the lower court expressly based its holding on Waterbury's standing as *owner* of the goods to file a protest. Nowhere in its opinion did the lower court ever refer to plaintiff as a consignee.

The foregoing differing decisions reflect the ambiguity in the tariff statute as it relates to the ultimate liability to the government for duties of the "actual" owner who does not enter the merchandise, and who does not have on file an owner's declaration and superseding bond as required by section 485(d) and regulation 8.18(d). It is, therefore, appropriate to consider the legislative history of the pertinent provisions in order to ascertain the legislative intent. Madame Adele v. United States, 23 CCPA 305, T.D. 48176 (1936); United States v. E. De Grandmont, Inc., 21 CCPA 17, T.D. 46345 (1933). See also United States v. J. E. Bernard & Co., Inc., 42 CCPA 69, C.A.D. 573 (1954).

Prior to the Tariff Act of 1922, the administrative provisions of the tariff laws relating to entry of merchandise generally referred to actions to be taken by the "owner, importer, consignee or agent," or by the "owner, consignee or agent." [3]

Thus, the Tariff Act of 1890 provides for verification of the invoice statement by the "oath of the owner, importer, consignee, or agent desiring to make entry of the merchandise"; for signing and filing of the declaration accompanying the invoice by the "owner, importer, consignee, or agent"; for additions to invoice values to raise same to market values by the "owner, consignee, or agent"; for penalties to be incurred by "any owner, importer, consignee, agent, or other person" attempting to make entry of imported merchandise by fraudulent or false invoices or statements; and for the filing of a notice of dissatisfaction with the decision of the appraiser or general appraiser as to the dutiable value of the merchandise by the "importer, owner, consignee, or agent of the merchandise."

The Acts of 1909 and 1913 have similar provisions for verification by the "oath of the owner, importer, consignee, or agent desiring to make entry of the merchandise"; for signing and filing of the declaration accompanying the invoice by the "owner, importer, consignee, or agent"; for additions to the invoice values by the "owner, consignee, or agent"; and for filing of appeals for reappraisement from the decisions of the appraiser and the general appraiser by the "im-

---

3. See, for example, Acts of April 20, 1818; August 30, 1842; July 30, 1846; March 3, 1857; March 3, 1863; March 3, 1865; July 14, 1870; and March 3, 1883. The Act of March 3, 1791 refers to the "proprietor, importer or consignee," and the Act of July 14, 1862, requires verification of the invoice upon entry by the oath of the owner, or in his absence "one of the party who is authorized by the owner to make the shipment."

porter, owner, consignee, or agent of the merchandise." [4]

Although, as indicated, the statutes provided that the person to whom the merchandise was consigned was deemed to be the owner, little distinction was made among the owner, importer, or consignee for purposes of entering the merchandise, or in filing appeals for reappraisement.

The procedures governing entry of merchandise were drastically revised by the Tariff Act of 1922. In no way may these changes be noted more clearly than by a comparison of the original House and Senate versions of the bill (H.R. 7456) with the one that finally emerged from the Conference Committee of both Houses during the 67th Congress, Second Session. The various amendments and changes agreed upon in conference are explained in the accompanying House Report No. 1223 of September 14, 1922.

The original House bill had provided for the filing with every entry of merchandise exceeding $100 in value a declaration signed by the "owner, importer, consignee or his agent." Where entry was made by an agent, other than the person to whom the merchandise actually belonged or was ultimately consigned, a bond was required for the production of a declaration of the actual owner or ultimate consignee. It also provided that, upon entry of merchandise for which the *importer* or consignee desired to make entry but was not in possession of the invoices and other documents required by law, the *importer* or consignee was to give a bond, conditioned upon production of all such documents. Similar references were made to the *owner* or consignee in the provisions governing incomplete entry, general orders, deposit of duties at the time of entry, and abandonment of merchandise.

The bill also allowed an appeal for reappraisement to be taken from the decision of the appraiser by the "importer, consignee or agent." An application for review from the decision of the general appraiser to the Board of General Appraisers was to be filed by the "importer, consignee, or agent."

The Senate amendments changed the provisions for making entry and eliminated all the previous references to "owner" and "importer." The right to file appeals for reappraisement was limited to "the consignee, or his agent." The right to file an application for review was limited to the "consignee, or his agent or attorney." Notice of appraisement was to be given to the "consignee, his agent or his attorney."

The foregoing amendments were agreed upon by the conferees, and were incorporated in the bill as finally enacted.

House Report No. 1223 states as follows on an amendment, No. 1854, which struck out the word "owner" but left the term "consignee" in section 457, providing for "General Order":

"On amendment No. 1854: The House bill made possible a distinction between the owner and the consignee of imported merchandise. The Senate amendment *makes the consignee the only person responsible in the importation of merchandise,* and the necessary changes have been made throughout the title; and the House recedes." [Emphasis supplied.]

Accordingly, as an explanation for the changes made by amendments Nos. 1856, 1915, 1936, 1953, 1993, 2007, 2024, and 2112, which eliminate the term "owner" from sections 457, 490, and 494, and the term "importer" from sections 486, 501, 504, and 563, and which leave only references to "consignee" and, in some cases "agent," the Report refers, in each instance to its statement on amendment No. 1854. [5]

The Report makes abundantly clear that the amendments adopted in the final version of the Act of 1922, and car-

---

4. Tariff Act of 1909: Sections 4, 5, 7, and 13; Tariff Act of 1913: Sections E, F, I, and M.

5. See also 62 Cong.Rec. 12491–12494.

ried over in the Tariff Act of 1930, were designed and intended to make the consignee the *sole* person liable to the government for the customs duties. The "actual" owner was not intended to be liable unless he assumed the obligation in accordance with section 485(d). This section was also enacted without change in the Act of 1930.

That the statutory consignee only is liable for payment of duties was recognized during consideration of H.R. 2667, the Smoot-Hawley bill, which was subsequently enacted as the Tariff Act of 1930. At the hearings held on June 15, 1929 by the Senate Committee on Finance on the special and administrative provisions of H.R. 2667, a witness on behalf of a customs brokers' association pressed unsuccessfully for changes in the bill. These changes were designed to divest the customs brokers of liability when entering merchandise on behalf of their principals, who were the actual importers.[6]

The 1930 Act amended section 484 to allow entry upon a duplicate bill of lading and upon a carrier's certificate. House Report No. 7, dated May 9, 1929, which accompanied H.R. 2667, noted at page 173:

"Accordingly, section 484 has been amended by the addition of a new subdivision (h) authorizing entry upon a duplicate bill of lading and restricting the delivery in such case as above indicated. As a further safeguard, the amendment provides that a person so making entry shall be liable for all additional and increased duties on the merchandise.

"*That there may be no question as to the rights of parties in such circumstances where the act imposes du-*ties on, or extends privileges to, the 'consignee,' a provision has been added to section 483 to the effect that a person making entry on a duplicate bill of lading in accordance with the amendment shall be deemed the *sole consignee* of the merchandise so entered." [Emphasis supplied.]

Senate Report No. 37, accompanying the bill reported out of the Committee on Finance, also observed at page 73, that "In view of the addition of the new matter in section 824, paragraph (2) of section 483 of the House bill has been rewritten."

Section 483, accordingly, provides that the person making entry either on a carrier's certificate or duplicate bill of lading under section 484(h) or (i) shall, *"For the purposes of this title * * * be deemed the sole consignee."* "This title," of course, encompasses, among others, sections 483, 484, 485 and 501.

Construing these statutory provisions *in pari materia*, it is the determination of the court that American, although the "actual" owner of the merchandise, was *under no obligation to the government* for payment of the duties. It consequently acquired no rights as consignee to file this appeal. Since the issue has not been raised, the court need not consider whether American, if authorized, could have filed the appeal as agent for Beacon, the sole consignee within the meaning of sections 483 and 501(a). See BASF Colors & Chemicals, Inc. v. United States, 57 Cust.Ct. 541, R.D. 11195 (1966), affirmed, 59 Cust.Ct. 834, A. R.D. 228 (1967), affirmed, 420 F.2d 763, 56 CCPA 47, C.A.D. 952 (1969).

For the foregoing reasons the motion to dismiss the appeal is granted.

6. Hearings before the Committee on Finance, United States Senate, 71st Cong., 1st Sess. 140 (1929).