**HARTFORD ACCIDENT & INDEMNITY CO. v. FLANAGAN.**

No. 961.

District Court, S. D. Ohio, W. D.
June 27, 1939.

416

Robert Adair Black, of Cincinnati, Ohio, and Orville M. Southard, of Dayton, Ohio, for plaintiff.

George Becker, of Dayton, Ohio, for defendant.

NEVIN, District Judge.

On August 29, 1938, plaintiff filed its petition herein praying judgment against defendant in the sum òf Three Thousand Six Hundred and Five and Sixty-five one-hundredths ($3,605.65) Dollars, with interest at 6% from the 19th day of December, 1931.

On September 23, 1938, defendant filed his answer setting up four defenses. The first three are affirmative defenses, the fourth a general denial. Defendant prays to be dismissed at plaintiff's costs.

On November 21, 1938, a document entitled "Request for Admissions under Rule No. 36" was filed by plaintiff. On December 1, 1938, defendant filed an affidavit in reply thereto. There is also on file the affidavit, on behalf of plaintiff, of one Guy R. Jones, an attorney in Illinois, in which he states that "he represented the Camargo State Bank on December 11th, 1931, in the consummation and adjustment of a claim presented by the Camargo State Bank against the Hartford Accident & Indemnity Company on a certain fiduciary bond executed on behalf of Lloyd Flanagan in favor of the Camargo State Bank of Camargo, Illinois, an Illinois corporation, by Hartford Accident & Indemnity Company on January 6th, 1926" and that "to his personal knowledge on December 11th, 1931, an adjustment of the claim of said Bank against said Surety Company was consummated by the execution of a release, in writing, duly signed by the President of said Bank, who is now deceased, a true copy of which said release is hereto attached and made part hereof by reference; * * * that said release was executed according to its terms and tenor, in consideration of the sum of $3125.00, then paid by said Hartford Accident & Indemnity Company to said Camargo State Bank, and that the execution of said release was duly authorized by the Directors and Stockholders of said Bank" and that "said Bank has been liquidated and was finally dissolved by authority of and under the direction of the Banking Department of the State of Illinois, on April 18th, 1935, and that as such, said banking corporation is no longer in existence as a le-

gal entity, and that there has not been, since April 18th, 1935, any representative, fiduciary or trustee of said corporation."

On January 3, 1939, plaintiff filed a motion for summary judgment under Rule 56, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, as follows: "Comes now the plaintiff, and moves on the pleadings, exhibits, documents, request for admissions and affidavit for summary judgment in its favor on the claims set out in its petition filed herein."

On January 10, 1939, defendant filed a "Memorandum in opposition of plaintiff's motion for summary judgment". At the outset of this memorandum defendant says "By virtue of Rule 56 of Civil Procedure for the District Courts of the United States, defendant joins with plaintiff and moves on the pleadings, exhibits, documents and affidavits for summary judgment in his favor."

At the request of both parties respectively, therefore, the cause is now before the court on the pleadings and documents referred to in the respective motions for summary judgment in favor either of plaintiff or defendant.

It is agreed between the parties that it is shown by the pleadings and the other documents referred to that, on December $7,500, which amount was later reduced, on March 10, 1931, to the sum of $5,000.

On October 13, 1931, defendant confessed in writing to the fraudulent embezzlement and misappropriation of funds belonging to the bank in the sum of $8,007.70. Defendant was indicted, entered a plea of guilty and was sentenced to, and served, a term in a state penal institution. While denying all liability but, nevertheless, desiring to settle and adjust any claims against it, plaintiff, on December 19, 1931 (the release is dated December 11, 1931— see copy attached to Jones affidavit), paid to the Camargo State Bank, on account of loss by reason of the fraudulent embezzlement and misappropriation of funds by the defendant, the sum of $3,125. In addition, plaintiff claims that in good faith it incurred expenses for investigation and attorneys fees on account of the fraudulent embezzlement the sum of $480.65, making the total sum of $3,605.65 for which, as indicated, it prays judgment against defendant with interest. The Camargo State Bank is no longer in existence. It has not existed as a legal entity since April 18, 1935. It has been liquidated, dissolved and has no successor.

On May 3, 1937, defendant herein filed his petition in bankruptcy in this court listing in Schedule A–3 the following:

"Schedule A–3

"Creditors Whose Claims are Unsecured

| Names of Creditors | When and Where Contracted | Nature | Amount |
|---|---|---|---|
| Hartford Accident & Indemnity Company, Hartford, Conn. | January 6, 1926 Camargo, Ill. | For Surety & Fidelity Bond Principal | $5193.45 |

(Memo: Surety paid obligee $3125.00 on Dec. 11, 1931, and incurred legal expenses in the amount of $468.45, totalling $3593.45; Interest for six years approximately amounts to $1600.00)"

23, 1925, defendant was in the employ of the Camargo State Bank of Camargo, Illinois, as "Cashier, General Banking", and that on that date he made an application to the plaintiff company herein for a fiduciary bond. In his application defendant states that he had theretofore been an employee of the Camargo State Bank for about 6½ years. On January 6, 1926, plaintiff accepted the application and became surety on the bond of defendant, who became principal thereon, in the sum of

On October 4, 1937, this court granted defendant's petition for final discharge in bankruptcy.

The three affirmative defenses set up by defendant are:

1. Discharge in bankruptcy.

2. Plaintiff is not the real, necessary and indispensable party plaintiff, and

3. Illegality of the contract, that is, the application and bond.

## Discharge in Bankruptcy.

1. Paragraphs 2, 3, 4 and 5 of the answer (Paragraph 1 contains certain admissions) constitute the first defense, which is that defendant has been discharged in bankruptcy from any claim of the plaintiff against him. There is no dispute as to the allegations of fact in the answer. The question is one of law, that is, whether or not, having listed the claim in his schedules, defendant has been or can be discharged therefrom under the Bankruptcy Act. Plaintiff contends defendant has not been so discharged because of Sec. 17a of the Bankruptcy Act (also Sec. 17a, Chandler Act, 1938) Title 11, § 35(a), U.S.C.A. The pertinent part of that section reads as follows:

"Sec. 17 [§ 35]. Debts not affected by a discharge

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * * except such as * * * (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity * * *."

Defendant submits that the ultimate purpose of plaintiff's petition is to avoid the effect of defendant's discharge in bankruptcy and that the burden of proving that such discharge was not operative is upon plaintiff; that plaintiff's petition sets forth an express contract of indemnity; that all contractual obligations are provable and dischargeable in bankruptcy except those created by embezzlement or misappropriation; that this contract of indemnity between plaintiff and defendant was not created by an act of embezzlement or misappropriation, and that this contract, therefore, is provable and dischargeable in bankruptcy. In support of his contention defendant relies on Sec. 63 of the Bankruptcy Act, 11 U.S.C.A. § 103 (subsections (a) (1, 3 and 4). The pertinent part is as follows:

"§ 103. Debts provable against

"(a) Debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded upon an open account, or upon a contract express or implied."

It is well established, however, that a debt may be such as that it is not dischargeable in bankruptcy even though it may be provable and share in distribution. Friend v. Talcott, 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718; Clarke v. Rogers, 228 U.S. 534, 33 S.Ct. 587, 57 L.Ed. 953.

In the Friend case (228 U.S. pages 38, 39, 33 S.Ct. page 507, 57 L.Ed. 718) the court say: "That is to say, the confusion lies in not distinguishing between creditors who are excluded from the bankrupt act and those who, although included therein, have had conferred upon them the benefit of an exception from the operation of the discharge. Even a superficial analysis of the text of the bankruptcy act will make this clear. Thus, § 63a and b [30 Stat. 562] enumerates the debts which may be proved, and which are therefore entitled to participate in the benefits of the act and are bound by its provisions, including a discharge. Section 17 [30 Stat. 550] enumerates the debts not affected by a discharge; that is, those exempted from its operation. It is apparent that the exemptions do not rest upon any theory of the exclusion of the creditor from the bankrupt act, or of deprivation of right to participate in the distribution, but solely on the ground that, although such rights are enjoyed, an exemption from the effect of the discharge is superadded. The text leaves no room for any other view, since the exceptions in terms are accorded to certain classes of debts which are provable under § 63, and therefore debts which are entitled to participate in the distribution, the language being: 'A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as,' etc."

In the Clarke case, supra, the court (228 U.S. page 548, 33 S.Ct. page 591, 57 L.Ed. 953) say: "The relation of the section was also recognized in Friend v. Talcott, 228 U.S. page 27, 33 S.Ct. 505, 57 L. Ed. [718]. It is there declared that § 17 enumerates the debts provable under § 63a which are not discharged. Among them, we have seen, are those created by fraud, embezzlement, misappropriation or defalcation in any fiduciary capacity."

Defendant concedes (Br. P. 9) that the Bank could prevail, as against defendant, by virtue of Section 17a of the Bankruptcy Act, but contends—as indicated—that plaintiff herein cannot do so because it comes into this case "only by contract". To this contention defendant urges there is but one exception "and that is, in the event the surety pays the debt in full to the bank, the surety is then subrogated to all the rights and remedies of the bank.

Relatively speaking, the surety would be placed in the exact position of the bank." But as further stated by defendant (Br. P. 9) "This is not the situation in this suit. The plaintiff admits that the theory of subrogation does not apply in that its claim is based on an indemnity contract." In its brief (P. 14) plaintiff states "If there had been any occasion for application of the rule of subrogation, it does not now exist. But here the plaintiff does not declare on its equitable right of subrogation. The petition sets forth an express contract of indemnity. The principles of the law of subrogation are not applicable to such an action."

Plaintiff contends, however, that quite apart from the doctrine of subrogation it is entitled to recover herein irrespective of defendant's discharge in bankruptcy because, while the contract of indemnity was not created by any act of embezzlement, "the contractual obligation to repay to plaintiff its loss and expenses was created by the embezzlements confessed to on October 13, 1931"; that prior to that time defendant owed plaintiff nothing on account of the contract of indemnity but that "immediately upon the defalcation a debt then arose under and by virtue of the express terms of the contract of indemnity that had not prior to that time existed."

▮ The court is of opinion that plaintiff is right in its contention and that defendant's debt though provable was not one from which he was or could be discharged in bankruptcy inasmuch as it was one created by his fraudulent embezzlement and misappropriation while acting as an officer and in a fiduciary capacity.

From the record it clearly appears that the primary purpose of defendant's petition in bankruptcy was to defeat his obligation to plaintiff which had been created by his embezzlement. The records of this court (Bankruptcy No. 6079) show that only two creditors were listed in his Schedule of Debts. In addition to plaintiff's claim there was a debt of $54.50 to a furniture company which held a chattel mortgage on the furniture. The only asset listed was furniture for $250 covered by the chattel mortgage. And plaintiff submits that defendant, having created an obligation by his own fraudulent acts now seeks the benefits of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., and that the purpose of the act is not to assist debtors such as defendant.

▮ It is the purpose of the Bankruptcy Act, among other things, to release an honest, unfortunate, and insolvent debtor from the burden of oppressive debts and to restore him to business activity. Williams v. United States Fidelity & Guaranty Company, 236 U.S. 549, 554, 35 S.Ct. 289, 59 L.Ed. 713. This is done in the interests of society and it has been held that the act should be liberally construed to that end. White v. Brown Shoe Co., 5 Cir., 30 F.2d 674, 675. But, too, the act should be liberally construed so as to prevent the discharge in bankruptcy of a liability which would not exist but for the fraudulent conduct of the bankrupt. "Public policy forbids the discharge of the bankrupt from a debt incurred through fraud while acting as an officer or in a fiduciary capacity, and a debt so created, whether reduced to a judgment or not, is not to be discharged in bankruptcy." Landgraf v. Griffith, 41 Ind.App. 372, 83 N.E. 1021, 1022.

Defendant's debt to plaintiff was brought into existence by defendant's embezzlement and misappropriation. If there had been no embezzlement or misappropriation there would have been no loss to the surety and no occasion for indemnity. Defendant's discharge in bankruptcy is not a defense in this action as against plaintiff herein.

In the case of Indemnity Ins. Co. of North America v. Covington,[1] the Supreme Court of New York County (Special Term) in a recent decision (April 13, 1939) where a very similar question was presented the court came to this same conclusion. There it appears that, on March 16, 1926, the Indemnity Company became surety on the bond of Teresa Covington, as administratrix, in the amount of $16,000. Subsequently the administratrix defaulted. On April 26, 1937, a decree of the surrogate's court was entered fixing the liability of the surety on the official bond of the judgment debtor in her capacity as administratrix. In satisfaction of the adjudged liability the surety paid over to the guardian of the deceased's two infant children, the sum of $3,393. Teresa Covington filed a petition in bankruptcy. In the petition in bankruptcy, the surety was listed as the only creditor of the judgment debtor. On September 14, 1938, the judgment debtor obtained a discharge from all of her debts provable under the Bankruptcy Act. Having stated that "The judgment debtor claimed that the judgment was a contract

---

[1] No opinion for publication.

420

implied in law and was therefore dischargeable", the conclusion of the court was "The debt claimed to have been discharged by the adjudication in bankruptcy is one which was created by the defalcation of the judgment debtor while acting in a fiduciary capacity. Debts created due to a defalcation occurring while the bankrupt occupied a fiduciary position are expressly excepted from discharge under the Bankruptcy Act."

Plaintiff submits further that, notwithstanding the bank was not paid in full, nevertheless, it acquitted defendant herein from any further claim (Jones affidavit) in consideration of the payment for which plaintiff now seeks recovery; that it (plaintiff) has the only surviving right and that it is therefore "in the exact position of the Bank" in which latter event defendant has conceded (Defendant's Br. P. 9) plaintiff's right to recover herein.

■ Plaintiff further submits that "the contract of indemnity, including the agreement to hold the surety harmless from loss in addition to the agreement to repay any money paid out, being larger than the equitable right of subrogation arising only after payment, includes all the rights of subrogation because the greater includes the less." Tennant v. United States Fidelity & Guaranty Co. et al., 3 Cir., 17 F.2d 38; In re Daily et al., D.C., 19 F.2d 95.

While, because of its conclusion just above set forth, it is unnecessary for the court to discuss or pass upon this latter claim of plaintiff, it is, nevertheless, the view of the court that plaintiff is correct in this contention also.

Plaintiff is Not the Real, Necessary and Indispensable Party Plaintiff.

■ 2. The gist of the second defense is that, inasmuch as the Camargo State Bank sustained a loss in excess of the amount paid by plaintiff, plaintiff is not the real, necessary and indispensable party in interest and has no cause of action against defendant.

The record shows that the Camargo State Bank has been liquidated and dissolved and has no successor, and that on December 11, 1931, a release was signed by the Camargo State Bank releasing defendant and plaintiff herein from all liability, claims and demands of every kind, character and description accruing under the fiduciary bond of plaintiff executed on behalf of defendant, and all matters connected therewith or resulting therefrom. It is

recited in the release (see Jones affidavit), inter alia, that: "(1) Said Party of the First Part for and in consideration of the premises, hereby fully and forever releases, acquits and discharges the said Hartford Accident and Indemnity Company, Party of the Second Part, its successors and assigns, and its said principal in said bond, Lloyd Flanagan, his executors, administrators or assigns, from any and all liability, claims and demands of every kind, character and description, either now existing or hereafter accruing, under said bond, and/or any and all renewals thereof, and also any and all matters connected therewith or resulting therefrom, the purpose of this release being to fully and forever release, acquit and discharge the said Hartford Company and said principal from any and all liabilities, claims and demands, either now existing or hereafter accruing under said bond, and/or any renewals thereof." The bank is not beneficially interested in recovery from the defendant. Its corporate entity has terminated. The sole right of action remaining in existence on the matters involved herein is that of plaintiff. Plaintiff is the only, and the real, party in interest.

Illegality of the Contract, that is, the Application and Bond.

■ 3. In this defense it is claimed that the contract of indemnity upon which this suit is predicated is void as against public policy.

Defendant cites several cases in support of this defense. It is unnecessary, however, to discuss them here as an examination shows they bear on other subject matters—attorneys fees in judicial proceedings, counsel fees and expenses on foreclosures, or other instances where there has been no opportunity to pass upon what such attorneys fees or expenses may include.

Defendant further asserts that the terms of the application are unconscionable and that they are unduly harsh and against public policy, and complains against plaintiff seeking to recover interest at the rate of 6%.

Plaintiff also cites a number of cases. These it submits as authorities against the claims asserted on behalf of defendant. It is unnecessary, as well, to discuss them. The transaction in this case does not involve a debtor-creditor relation. Plaintiff did not lend defendant any money. The indemnity agreement here constitutes a

part of the consideration for writing the bond. It is not something added on by way of penalty without consideration. The contract under consideration is not void nor is it against public policy. As evidenced by his "Memo" in his "Schedule A–3" defendant seems to have recognized the "legal expenses" and "interest" as a just claim against him and asked to be discharged therefrom in bankruptcy. That the contract is entire and indivisible is not only agreed to but urged by defendant (Br. PP. 13, 14).

In view of all of the foregoing, upon the pleadings and documents submitted, the court is of opinion, and so finds, that plaintiff is entitled to a summary judgment against defendant (as provided for in Rule 56 of the Rules of Civil Procedure) in the amount of $3,605.65, with interest thereon at 6% from the 19th day of December, 1931, as prayed for in its petition, and for its costs herein expended.

An order may be drawn awarding judgment accordingly.