**In the Matter of CHEMO PURO MANUFACTURING CORPORATION, Bankrupt.**

United States District Court
S. D. New York.
Feb. 5, 1962.

Hart, Hume & Engelman, of New York City, for petitioner R. J. Saunders & Co., Inc.

David W. Kahn, of New York City, for trustee.

DAWSON, District Judge.

This is a petition for review of an order of Referee Loewenthal denying the application of petitioner R. J. Saunders & Co., Inc., to have its claim of $68,997.23 declared a prior claim. The order allowed the amount as a general unsecured claim.

There is no substantial dispute as to the facts, which are set forth in Referee Loewenthal's findings. The petitioner is a customs broker. For several years prior to the bankruptcy herein, the petitioner, in its capacity as customs broker for Chemo Puro (the bankrupt), effected the customs entry for imports made by the bankrupt. In so doing petitioner

entered the imports in its own name as nominal consignee, and filled out "consumption entries" listing itself as the importer of record. In order to facilitate passage of the imported merchandise through customs, petitioner received bills of lading and related import documents from the bankrupt. Petitioner was required, as consignee and importer of record, to file a surety bond with the United States in which it was designated as principal. The bond assured payment to the United States of any duties assessed against the petitioner, as importer of record, on all imports made by it.

Prior to the bankruptcy it was the practice of the petitioner to charge all duties imposed on imports entered on behalf of the bankrupt against the open account it maintained with the bankrupt. On November 9, 1960 Chemo Puro went into bankruptcy. As of that date the account between the petitioner and the bankrupt was in balance. All prior import duties had been paid by petitioner, which in turn had been reimbursed by the bankrupt. Sometime after the date of bankruptcy the United States assessed additional import duties on prior imports in the net amount of $68,997.23. This amount was paid to the United States by petitioner in its capacity as principal on the surety bond.

Petitioner urges that the amount paid by it to the United States as principal on the bond should be declared a priority claim against the bankrupt's estate. Its theory can be summed up in this way: (1) Bankrupt was liable to the United States for customs duties on goods imported by it or on its behalf. (2) The petitioner paid the additional customs duties owing from bankrupt to the United States and thereby became subrogated to all rights of the United States. (3) The United States is entitled to a priority for unpaid customs duties in bankruptcy proceedings. The Trustee concedes that petitioner has a "general unsecured claim" against the estate in the amount of $68,997.23 but he denies the priority of the claim.

The issue presented, therefore, is whether the petitioner, who as nominal consignee and importer of record, made payment of import duties to the United States, is fully subrogated to the priority rights of the United States in a bankruptcy proceeding.

The initial question which must be answered is whether petitioner in paying the additional customs duties assessed by the United States was dicharging its own obligation, or whether it was discharging an obligation of the bankrupt. It seems clear that the petitioner was paying its own debt. As importer of record and consignee, petitioner was made primarily responsible for the payment of duties on the entered goods. 19 U.S.C.A. § 1483. That it recognized this primary liability is borne out by the fact that it posted the surety bond required by the statute and regulations, designating itself principal, as consignee and importer of record.

Title 19 U.S.C.A. § 1483 states that the consignee or holder of a negotiable bill of lading shall be treated as the owner of the imported merchandise. Only the consignee can remove the imported goods. 19 U.S.C.A. § 1484(a). In order to expedite importation procedures the consignee can remove the goods under bond. 19 U.S.C.A. § 1499. This bond is prescribed by 19 CFR 8.28 and must be posted by the consignee. Such a bond was in fact posted by the petitioner. The foregoing indicates that petitioner, in agreeing to act as nominal consignee and importer of record, thereby bound itself to become primarily liable for any duties imposed by the United States on goods imported on behalf of the bankrupt.

It may be true that bankrupt, as the actual owner and importer of the merchandise, might also be held liable for unpaid customs duties under certain conditions. 19 U.S.C.A. § 1484(a). However, this in no way renders petitioner any less liable for the customs duties. To the contrary, the statutes and regulations very carefully and clearly fix liabilities for duties on the party hav-

ing actual possession and control of the merchandise; that is, the consignee and holder of the bill of lading.

■ The United States made demand upon petitioner for payment of additional duties on imported merchandise as to which petitioner designated itself importer of record and consignee. The petitioner's payment of additional assessments was not payment of the debt of another but rather discharge of its own primary liability. It may well be that the petitioner can proceed against the bankrupt directly and, in fact, Referee Loewenthal's order recognized petitioner's claim for $68,977.23 as a "general unsecured claim." (Conclusion of Law No. 8). But petitioner cannot stand in the shoes of the United States and claim priority rights in a bankruptcy proceeding against the bankrupt. The United States looked to and received payment from the petitioner as its primary obligor, not as guarantor or surety.

"* * * [S]hould payment be made by the one who is ultimately obliged to discharge the debt, no right of subrogation can arise in his favor, since such payment operates as an extinguishment of the debt and a discharge of all liens held by the creditor for his security." 83 C.J.S. Subrogation § 17.

Amick v. Columbia Casualty Co., 101 F. 2d 984 (8th Cir. 1939); Commercial Casualty Ins. Co. v. Petroleum Pipe Line Co., 83 F.2d 412 (10th Cir. 1936).

■ Congress has seen fit to grant subrogated priority in only a single specific instance, that of a surety making payment to the United States on a bond given to the United States.[1] Petitioner concedes that it does not fall within this statute since it was not a surety, but rather the principal on the bond. The fact that Congress has chosen to single out a narrow class, that of sureties on bonds given to the United States, for special treatment gives rise to the strong implication that it meant to limit this priority solely to the class enumerated and withhold it from all other classes of creditors. The general equity power of federal courts is clearly superseded by and must be confined within the Bankruptcy Act and related statutes. Neither the Bankruptcy Act nor any statutes dealing with bankruptcy can be interpreted as creating the rights of subrogation and priority in a case such as this.

It can be further pointed out that petitioner could have relieved itself of liability prior to the bankruptcy by recourse to the Tariff Act provisions.[2] Petitioner neglected or chose not to do so, perhaps to maintain amicable business relations with the bankrupt. But in any case it cannot be maintained that petitioner finds itself in its plight involuntarily. It elected to take charge of im-

1. Section 193 of Title 31 of the United States Code Annotated reads as follows:
"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and main-

tain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

2. The Tariff Act, 19 U.S.C.A. § 1485(d) provides as follows:
"(d) A consignee shall not be liable for any additional * * * duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee."

ports for the bankrupt, took possession of its bills of lading, designated itself as consignee and importer of record and filed a bond with the United States assuring payment of duties. Even after these steps were taken, if petitioner had thereafter lost confidence in the bankrupt, it could have availed itself of the provisions of 19 U.S.C.A. § 1485(d), referred to above, in order to avoid the risks it had undertaken. Since petitioner voluntarily assumed the liability involved and later declined to relieve itself from such liability, it must now abide by the consequences of its action.

The order of Referee Loewenthal denying the application of petitioner to declare its claim a prior claim is affirmed. So ordered.

