**R. J. SAUNDERS & CO., Inc., Petitioner-Appellant,**

v.

**Donald VINCENT, Trustee of Chemo Puro Manufacturing Corporation, Bankrupt, Respondent-Appellee.**

No. 20, Docket 27478.

United States Court of Appeals Second Circuit.

Argued Oct. 9, 1962.

Decided Oct. 25, 1962.

Jack Hart, of Hart, Hume & Engelman, New York City (Lewis Stockman, New York City, on the brief), for petitioner-appellant.

David W. Kahn, New York City, for respondent-appellee.

Before CLARK, MOORE, and SMITH, Circuit Judges.

CLARK, Circuit Judge.

The bankrupt, Chemo Puro Manufacturing Corporation, was the ultimate consignee of goods which it purchased abroad. For several years prior to the bankruptcy here involved, the appellant, R. J. Saunders & Co., Inc., had acted as customs broker for Chemo Puro. In this capacity, appellant entered shipments through customs, paid the duties, and billed Chemo Puro. Appellant was required, as nominal consignee and importer of record, to file a surety bond with the United States. The bond given here designated appellant as principal, a corporate surety as surety, and the United States as obligee. It assured payment to the United States of all duties which might be levied upon goods entered by appellant as nominal consignee.

Chemo Puro was adjudicated bankrupt on November 9, 1960. At that time, the account between the bankrupt and the appellant was in balance. Subsequently, the United States assessed additional import duties on prior imports in the net amount of $68,997.23. Appellant paid this amount to the United States, as it was obligated to do by its bond. It then sought an order of priority for its claim for refund, but the bankruptcy referee denied appellant's petition and the district court affirmed. D.C.S.D.N.Y., 202 F.Supp. 140.

On this appeal appellant again urges that its claim in the amount of $68,997.23 should be accorded priority in the distribution of the bankrupt's estate. Appellant's theory is well stated by the District Judge: "(1) Bankrupt was liable to the United States for customs duties on goods imported by it or on its behalf. (2) The petitioner paid the additional customs duties owing from bankrupt to the United States and thereby became subrogated to all rights of the United States. (3) The United States is entitled to a priority for unpaid customs duties in bankruptcy proceedings." D.C. S.D.N.Y., 202 F.Supp. 140, 141. Chemo Puro's trustee concedes the claim against the estate, but contends that it

should be treated as a general unsecured claim without priority status.

■■ Appellant's contention is based on principles of subrogation: Having paid the additional duties, it wishes to succeed to the rights of the United States against the bankrupt, including the government's right to have its claim accorded priority status in the distribution. The threshold question, then, is whether the appellant, in paying the additional duties, was paying its own debt, or that of the bankrupt. It is clear that, under the Tariff Act,[1] a nominal consignee, such as appellant here, is to be treated as the owner of the merchandise. 19 U.S. C. § 1483. The consignee, in order to expedite entry of the goods, may remove them under bond. 19 U.S.C. § 1499; 19 CFR § 8.28. By furnishing such a bond, the appellant here undertook liability for the duties which it paid. If it had not wished to remain liable for the payment of such additional duties, appellant could have escaped liability by designating the true owner (bankrupt here) and having it post bond. 19 U.S.C. § 1485(d).[2] This it did not do. We hold that, in paying the $68,997.23, the appellant was discharging its own debt.

There is a question whether the bankrupt remained liable for the duties involved here, even though appellant by its bond undertook such liability. The appellant bases its claim for subrogation on its contention that the bankrupt did remain so liable. The statute is silent on this point. At the outset the question seems a bit unrealistic, since entry by the consignee is bonded; it is much easier to picture the government, on default of the consignee, pursuing its rights against the consignee's surety than against the importer. This is especially true in this case, where the importer had been adjudicated before the additional duties here involved were assessed. And in any event, assuming *arguendo* that the importer does remain liable together with the consignee, this would not detract in any way from the consignee's bonded liability to the government. The United States here received payment from a primary obligor, and appellant's claim for subrogation must be denied. See In re Newland, 3 Cir., 115 F.2d 165; In re Conklin, 2 Cir., 110 F.2d 178.

■ Congress has allowed subrogated priority in only one situation—that in which a surety on a bond given to the United States discharges the debt on behalf of his principal.[3] Appellant does

1. The Tariff Act, 46 Stat. 721 (1930), 19 U.S.C. § 1483 (1958), provides in part:
"For the purposes of this subtitle—
"(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof."

2. The Tariff Act, 46 Stat. 724 (1930), 19 U.S.C. § 1485(d) (1958), provides as follows:
"(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may

prescribe. Such owner shall possess all the rights of a consignee."

3. 31 U.S.C. § 193 (1958), originally enacted in 1 Stat. 676 (1799), states:
"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

not stand as "surety" for the bankrupt here; indeed, appellant was principal on a bond which it furnished the government. Although we do not feel bound by the maxim *"expressio unius est exclusio alterius,"* the statute has been in force since 1799 without amendment; we refuse to extend it by implication to cover the situation here presented. Appellant must be content with its general claim against the bankrupt estate.

Affirmed.