**In the Matter of I. C. HERMAN & CO., INC., Debtor-Appellee,**

v.

**TAUB, HUMMEL & SCHNALL, INC., Claimant-Appellant.**

**No. 556, Docket 73–2042.**

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1974.

Decided May 28, 1974.

Certiorari Denied Oct. 15, 1974.
See 95 S.Ct. 153.

Howard Karasik, New York City (Sherman & Citron, New York City, on the brief), for debtor-appellee.

Albert Adams, New York City (Ferris, Adams & Creidy, New York City, on the brief), for claimant-appellant.

Before LUMBARD, FRIENDLY and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from an order entered in a Chapter XI proceeding in the Southern District of New York, John M. Cannella, District Judge, the sole question is whether voluntary payment by a customs broker of United States customs duties due from an importer entitles the broker in the importer's Chapter XI proceeding to the priority to which the government would be entitled for debts due the government. The district court and the bankruptcy referee answered the question in the negative. We affirm.

Appellant Taub, Hummel & Schnall, Inc. (Taub) is a customs broker. Appellee I. C. Herman & Co., Inc. (Herman) is an importer of goods from abroad. Taub acted as customs broker for Herman. The goods without exception were imported in Herman's name.

A bond in amount of $50,000 was executed by Herman as principal pursuant to which Herman agreed to pay to the government customs duties on its imported goods. Taub did not execute this or any other bond, either as principal or surety, for the payment of Herman's customs duties.[1]

---

1. In an affidavit, submitted in support of Taub's priority claim in the instant proceeding, its president stated:

"It is clear therefore that the broker, my corporation, Taub, Hummel and Schnall, Inc. was at no time obligated to pay any

During the period from March 3, 1972 through April 7, 1972, Taub voluntarily and without obligation advanced the sum of $32,048.45 in payment of Herman's customs duties due on Herman's imports.

On April 6, Herman filed a petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act. 11 U.S.C. § 701 et seq. (1970). In due course, Taub filed in the Chapter XI proceeding a claim for $46,779.54. Of this total claim, Taub classified as a priority claim the $32,048.45 of Herman's customs duties which it had paid to the government.[2] Upon application to the bankruptcy referee, Herman obtained an order reclassifying Taub's $32,048.45 priority claim as a general unsecured claim.

On Taub's petition to review, the district court affirmed the referee's reclassification of Taub's claim as a general unsecured claim and held that it was not entitled to priority status.

Taub argues that, as a result of discharging Herman's obligations to the government arising from the assessment of import duties, it is entitled to the priority to which the United States would be entitled for debts due the government. Taub's priority claim in essence is based on principles of subrogation. Having paid customs duties due from Herman to the United States, Taub says that it is entitled to succeed to the government's rights against Herman, including the government's priority claim in bankruptcy proceedings for unpaid customs duties.

Priority by subrogation, however, has been granted only in the limited situation provided for in 31 U.S.C. § 193 (1970):

"Whenever the principal in any bond given to the United States is insolvent

. . ., and . . . any surety on the bond . . . pays to the United States the money due upon such bond, such surety . . . shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent . . . as is secured to the United States. . . ."

In view of this statutory provision, the question before us is whether the fact that Taub was not a surety on the bond executed by Herman for the payment of customs duties forecloses Taub's priority claim.

We hold, as did the district court and the bankruptcy referee below, that the rationale of our decision in R. J. Saunders & Co., Inc. v. Vincent, 309 F.2d 65 (2 Cir. 1962), aff'g 202 F.Supp. 140 (S.D.N.Y.1962), requires that Taub's claim be treated as a general unsecured claim without priority status. In *Saunders*, a customs broker, in order to expedite entry of imports, see Union Brokerage Company v. Jensen, 322 U.S. 202, 204 (1944), had paid customs duties due from the bankrupt importer. We rejected the contention of the customs broker that it was entitled to succeed to the rights of the United States against the bankrupt, including the government's right to have its claim accorded priority status in the distribution of the bankrupt's estate. And we pointed out that "Congress has allowed subrogated priority in only one situation—that in which a surety on a bond given to the United States discharges the debt on behalf of his principal." 309 F.2d at 67.[3]

We recognize that *Saunders* differs from the instant case in certain respects. There, unlike here, the customs broker

---

part of the debtor's duties to the United States government."

2. The $14,731.09 difference between Taub's total claim of $46,779.54 and its asserted priority claim of $32,048.45 represented certain importing charges, other than customs duties, which Taub had advanced on behalf of Herman.

Of the $32,048.45 in customs duties claimed to have been paid by Taub on behalf of

Herman prior to the latter's filing of its Chapter XI petition, apparently $128.11 was paid on April 7, the day after the petition was filed.

3. The "one situation" is 31 U.S.C. § 193 (1970), referred to above. As Judge Clark pointed out in *Saunders*, this statute has been in force since 1799 without amendment 1 Stat. 676 (1799).

was the nominal consignee and the importer of record; and the broker also was the principal on the bond furnished to the government. Since the broker did not stand as surety for the importer, however, we refused in *Saunders* to extend the statute by implication to accord priority to the broker's claim. Likewise here we decline Taub's invitation to extend Section 193 to accord its claim subrogated priority status, thus altering the strict priority provisions of Section 64 of the Bankruptcy Act, 11 U.S.C. § 104 (1970). See In Re Chicago Express, Inc., 332 F.2d 276, 278–79 (2 Cir.), cert. denied, 379 U.S. 879 (1964).

Finally, we reject as a non sequitur Taub's argument that a holding in the instant case affirming its classification as a general unsecured creditor, read in conjunction with the *Saunders* holding that subrogated priority is not available when the broker is the nominal consignee and importer of record, means that there is no conceivable situation in which a broker can achieve priority status by paying the customs duties owed by an importer. The short answer to this is that all a customs broker need do to gain priority is to go surety on the importer's customs duty bond.

Affirmed.

FRIENDLY, Circuit Judge (dissenting):

Believing that the majority has taken an unduly narrow approach to the rights of customs brokers whose clients have become insolvent and that the issue here is of importance to the effective administration of the customs laws, I respectfully dissent.

I do not read the limited grant of subrogation in 31 U.S.C. § 193, on which Taub concededly cannot rely, as precluding its having that remedy here. Although I am not at all sure I agree with R. J. Saunders & Co. v. Vincent, 309 F.2d 65 (2 Cir. 1962), so heavily relied on by the majority, the case is clearly inapposite. There the account between the customs broker and the importer was in balance at the time of the bankruptcy, and sums earlier advanced like those here at issue were not involved. The United States made additional assessments thereafter, which the broker paid because, as nominal consignee and importer of record, it had filed a bond in which it was designated as principal and a corporate surety as surety. This court held only that since the broker had made itself rather than the bankrupt the primary obligor, it "was discharging its own debt," 309 F.2d at 67.[1] Judge Clark said that while the court did not "feel bound by the maxim '*expressio unius est exclusio alterius*,'" 309 F.2d at 68, it could not extend a statute allowing subrogation by a surety against an insolvent principal to cover the case of a solvent principal seeking subrogation against an insolvent who was not a party to the bond at all. This, and only this, was decided.

Moreover, so far as the instant case is concerned, we need not even reach the question whether § 193 has implicitly exclusive effect in cases within its general ambit, since that section applies only when the primary debtor is "insolvent" at the time the debt is paid by the party seeking subrogation. On the facts before us, in contrast to those in *Saunders*, Taub had paid almost all the sums in issue to the Government before the Chapter XI petition was filed.[2] See In re Fastline, Inc., No. 65–B–872 (S.D.N.Y. Feb. 14, 1967) (Babitt, Referee in Bankruptcy). Surely the majority would not contend that this statute implicitly forbids subrogation by a surety who has discharged a principal's obligation to the United States prior to the principal's insolvency simply because the statute does

---

1. It was fairly disputed whether the importer remained liable at all, see 309 F.2d at 67, although the court assumed this *arguendo*.

2. There is no evidence that Herman was insolvent when Taub advanced the duties, except for the $128.11 paid by Taub on April 7, see note 2 to the majority opinion.

not grant that right. If the statute does not preclude subrogation in that case, it does not do so here.

The Supreme Court has instructed that in bankruptcy proceedings courts are not to read "statutory words with the ease of a computer," since "[t]here is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." See Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966), a decision whose approach is not without some bearing here, and 1 Collier, Bankruptcy ¶ 2.09 (1974), citing innumerable cases. Under general equitable principles, Taub should be allowed subrogation to the Government's priority if Herman would have been "unjustly enriched by the retention of the benefit . . . conferred" when Taub paid the duties. Restatement of Restitution § 162 (1937). Under such principles, it is not necessary that Taub should have been a surety on the customs duties bond executed by Herman, *id.*, Reporters' Notes on § 162, at 199, provided only that its payment of the duties was not "officious." *Id.* § 162, Comment *b*; *cf. id.* § 2. Although the most common cases for allowing subrogation for discharge of an obligation other than by a surety are payments induced by fraud or mistake or payments effected by the debtor's wrongful use of another's property, *see, e. g.*, In re Ennis, 187 F. 720 (2 Cir. 1911), app. dismissed sub nom. Bamford v.

Russell, 226 U.S. 623, 33 S.Ct. 110, 57 L. Ed. 386 (1912), it cannot be reasonably said, in light of the crucial role and extensive duties of a customs broker in effecting the rapid entry of imports, so well described in Union Brokerage Co. v. Jensen, 322 U.S. 202, 204–205, 64 S.Ct. 967, 88 L.Ed. 1227 (1944),[3] that Taub's payment here was "officious" and that Herman therefore would not have been "unjustly" enriched by retention of the benefit thereby conferred. While it is true that if the broker had not made the payments but had required the debtor to do so, the debtor's assets would have been depleted and creditors might not have extended credit, it is equally true that if the broker had left the goods on the dock subject to the Government's lien, creditors would doubtless have been none the wiser. Taub paid the duties to enable Herman to conduct its business, in Herman's interest and presumably in that of its creditors. To allow priority here in the interest of facilitating the process of importation and the collection of import duties therefore would not be, as the majority insist, to alter "the strict priority provisions of § 64 of the Bankruptcy Act," but simply to permit subrogation to an admitted priority of the United States.[4] The purpose of 31 U.S. C. § 193, enacted long before there was a bankruptcy act, was to bestow priority on a surety against an insolvent principal in the case there defined, not to limit the application of equitable principles in pro-

---

3. The Court there said:
   Speed in making entry is vital, because goods cannot proceed to their ultimate destination until its completion. Apart from the fact that importers cannot always or even often make entries in person, the procedure makes demands upon skill and experience. The specialist in these services is the customhouse broker. In addition, he advances the duty in order that the goods may be cleared. 19 U.S.C. § 1505, 19 U.S.C.A. § 1505. The competence of the broker also bears on the efficient collection of customs duties in that the likelihood of additional assessment or refund after final determination of the duty is greatly lessened by accuracy in the tentative computation.
   322 U.S. at 204.

4. I am not at all clear that, as the majority suggest, a customs broker can protect itself in the situation here presented by the simple expedient of becoming a "surety on the importer's customs duty bond." Apart from the facts that customs brokers may not wish to assume such a continuing contingent liability and would doubtless demand compensation for doing so, I read 19 C.F.R. § 8.28(b) as requiring deposit of the estimated duties even when a bond has been filed. When, as here, the issue concerns the estimated duties already paid rather than liability under the bond, I fail to see what significance there would be in the customs broker's having gone surety on the latter.

ceedings under the Bankruptcy Act. Taub clearly was not "discharging its own debt," 309 F.2d at 67.

I would reverse the judgment of the district court and the order of the referee.