**In re William Shedd KISICH, and Elizabeth N. Kisich, aka Elizabeth N. Fowler, Debtors.**

**U.S. LIFE TITLE INSURANCE COMPANY OF DALLAS, a Texas corporation, and Santa Clara County Title Company, a California corporation, Defendants-Appellants,**

**v.**

**William Shedd KISICH, and Elizabeth N. Kisich, aka Elizabeth N. Fowler, Plaintiffs-Appellees.**

**BAP No. NC–82–1145–EKV.
Bankruptcy No. 4–81–1119HS.
Adv. No. 4–81–0384AH.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Sept. 17, 1982.

Decided March 15, 1983.

Stephen Oroza, Goldberg, Stinnett & MacDonald, San Francisco, Cal., for defendants-appellants.

Randy P. Orlik, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiffs-appellees.

Before ELLIOTT, KATZ and VOLINN, Bankruptcy Judges.

## OPINION

KATZ, Bankruptcy Judge.

The defendant title companies appeal from summary judgment in favor of the debtors, holding that any liability to appellants is dischargeable.

### I

In 1962 one of the debtors, Mrs. Elizabeth N. Kisich (then unmarried and known as Elizabeth N. Fowler) owned a home in San Jose. In that year the IRS assessed additional income taxes against her and recorded a lien against the property for pre-1962 tax years. In 1977, Miss Fowler married William Kisich, the other debtor. In 1978 she sold the San Jose house for $97,000 to a couple known as the Lamberts who are not parties to this action. The appellants-defendants-counterclaimants in this action were the escrow company and title insurance issuer in connection with that sale.

The property was sold and escrow closed as if the tax lien did not exist. In 1980 the IRS appeared and threatened to foreclose the lien. The Lamberts made a claim against the appellant insurance company. The insurance company then paid the IRS $72,821.90 and the IRS filed a lien release. The parties dispute whether Mrs. Kisich disclosed the existence of the lien at the time of the sale. Mrs. Kisich claims that when the initial title report came back, she informed the appellants that she thought there was a tax lien on the property, but eventually assumed it had lapsed because the title company assured her there was no record of a tax lien.

The Kisiches filed an adversary proceeding against the appellants essentially asking for a declaratory judgment that the appellants held no valid non-voidable liens against property of the debtors. The appellants counterclaimed in large measure further pursuing their theory that they were subrogated to the rights of the United States with respect to the claim. They claimed the debt was nondischargeable under § 523(a)(1) which incorporates § 507(a)(6)(A) relating to certain income tax obligations and § 523(a)(7) relating to tax penalties.

They also counterclaimed on the theory that Mrs. Kisich's alleged nondisclosure of the existence of the tax lien was fraudulent under § 727(a)(4).

On the day of the hearing, Judge Hughes ruled that he would treat the amended counterclaim as a motion to amend the counterclaim to plead nondischargeability under Bankruptcy Code § 523(a)(2) in lieu of § 727(a)(4) and granted the motion to amend.

### II

The issues are:

1. Was the trial court wrong in granting summary judgment because there was merit in the appellants' claim that they succeeded to the lien rights of the government and to the nondischargeability status of taxes and tax penalties?

2. Having determined that it would permit amendment of the counterclaim with respect to § 523(a)(2), did it err in finding no triable issue raised by the amendment?

### III

Even accepting the appellants' dubious proposition that it is subrogated to the lien rights of the United States, the IRS had recorded a release which extinguished any liens prior to the debtors' Chapter 7 petition. IRC § 6325(f).

■ Appellants urge that their claim is nondischargeable under § 523(a)(1) or § 523(a)(6). The following cases imply that except in specific situations not at issue here, when a private party pays a priority government claim and is subrogated to the debt, the debt does *not* retain its priority status. *R.J. Saunders & Co., Inc. v. Vin-*

cent, 309 F.2d 65 (2nd Cir.1962); *I.C. Herman & Co., Inc. v. Taub, Hummel & Schnell, Inc.,* 497 F.2d 1301 (2d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 153, 42 L.Ed.2d 125 (1974). However, whether appellants are subrogated to the priority status is not relevant because the claims at issue are simply not priority claims.

The tax was assessed more than 17 years before the bankruptcy petition. Section 507(a)(6)(A) requires the income tax claim to be fairly recent under several alternatives. Under each alternative this claim is clearly stale. Under § 507(a)(6)(A)(i) there is a priority only if the tax return was due more recently than three years before the petition. Section 507(a)(6)(A)(ii) is obviously inapplicable. The appellants' only response is that the Kisiches cannot rely upon this time limit because they have executed statute of limitations waivers on the liens under IRC § 6502. But appellants' only support for the argument that this extends the § 507 period is a quotation in one of the Senate Reports in the legislative history. An examination of the report reveals that the provision the Senate Committee was referring to was later dropped and never enacted. It is also illogical to suggest that a waiver of IRC § 6502, which creates a *six*-year statute of limitations for collection of previously assessed taxes can extend the *three*-year nondischargeability period. If the Panel were to adopt appellants' argument, then it would follow that an individual could resurrect an expired priority by agreement—a proposition inconsistent with the theory that a debtor's assets are to be distributed not in accordance with the debtors' preferences, but equally, except to the extent of statutory priorities.

This exhausts all theories urged by the appellants except those raised with respect to alleged fraudulent nondisclosure under § 523(a)(2)(A).

## IV

On the day of hearing of the motion for summary judgment, the court allowed defendants to amend their counterclaim to include the allegation that the Lamberts paid money for the use and benefit of the Kisiches based on their reliance on fraudulent omissions of material facts and that the Lamberts' legal rights and causes of action have been assigned to plaintiff.

The court, after consideration of the debtors' motion for summary judgment and the defendants' amended counterclaim, declined to hold the debt to be nondischargeable under 11 U.S.C. § 523(a)(2).

■ Section 523(a)(2) excepts from discharge debts resulting from circumstances in which the debtor obtained property through misrepresentation or fraud. To defeat the debtors' right to discharge of a pre-petition debt, a creditor must establish that such money or property was obtained by false representations, knowingly and fraudulently made. *In re Geyen,* 11 B.R. 70 (Bkrtcy.1981); *see also,* 3 Collier on Bankruptcy ¶ 523.08 p. 523–39 (15 ed. 1982).

This matter came before the court on debtors' motion for summary judgment. The appellants' only opposing affidavit did not refute Mrs. Kisich's declaration that she informed appellant, and through it, the Lamberts of the tax lien, nor does it appear that the appellant's officer was stating facts based on personal knowledge as is required by Fed.R.Civ.P. Rule 56(e). We therefore accept the court's ruling as to the absence of the debtors' intent to defraud the Lamberts.

Section 523(a)(2) requires, in addition to proof of intentional fraud, that the creditor reasonably relied on the misrepresentation. This element of the counterclaim is also lacking support.

The primary motivation in purchasing title insurance is to protect against the very kind of problem here involved. The Lamberts did not rely on the representations of the debtors regarding title but rather on the conclusions of the appellant after it conducted a title search. Furthermore, it is patently unreasonable for the appellant to have relied on the debtors' representations since the very essence of a title insurer's function is to ascertain the state of the title to property. Should a cloud upon the title

subsequently be discovered, the buyer has recourse against the insurer under the policy.

The appellant has been compensated by the Lamberts for undertaking such risk. Section 523(a)(2) was never intended to be used by errant insurers to shift the risk of loss to the debtor.

■ Thus, any question regarding the debtors' omission or misrepresentations concerning the federal tax liens is simply irrelevant without evidence of actual fraud coupled with a showing of reasonable reliance on the misrepresentation. The record provides no support for the appellants to assert the existence of these elements. The affidavits and supporting papers show that there is no genuine issue as to any material fact. We therefore AFFIRM the court's decision to grant the debtors' motion for summary judgment as required by Fed.R. Civ.P. Rule 56.

ELLIOTT, Bankruptcy Judge, dissenting:

I concur on the issue of dischargeability of the tax claims, but I dissent and would remand for trial on the issue of dischargeability for fraud.

> Since it is not the function of the trial court to adjudicate genuine factual issues at the hearing on the motion for summary judgment, in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn in favor of the party opposing the motion.

6 *Moore's Federal Practice* (2nd Ed.) 56–469.

Drawing inferences of fact in favor of the party opposing the motion, it seems obvious to me that the Lamberts would not have purchased the property encumbered by an undisclosed $60,000 tax lien.

California Civil Code § 1572 provides, in part:

> Actual fraud, within the meaning of this Chapter, consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

> 3. The suppression of that which is true, by one having knowledge or belief of the fact;

I would hold that there is a triable issue of fact as to whether the Kisiches suppressed the fact that the property was subject to tax liens to induce the Lamberts to purchase the real property. See *In re Haddad,* 21 B.R. 421, 6 C.B.C.2d 1145, 9 B.C.D. 371 (Bkrtcy.App.9th Cir.1972), affirmed March 2, 1983 by unpublished memorandum, C.A.9th —— F.2d ——, No. 82–4412, in which we held that failure to disclose a material fact gave rise to a non-dischargeable debt under 11 U.S.C. § 523.

I also note that the defendants' counterclaim alleges that the Kisiches conveyed the property to the Lamberts by grant deed, an allegation not directly controverted by the Kisiches' response that they admitted "conveying" the property.

California Civil Code § 1113 provides that a grant deed includes a covenant that the estate conveyed is free from encumbrances made or *suffered* by the grantor (emphasis added).

Therefore, the nature of the conveyance in this proceeding as well as the consequences of a breach of the covenant (if one exists) should also be addressed by the trial court.

Appellant Santa Clara County Title Company (SCCTC) acted as escrow agent in the sale from Kisich to Lambert. SCCTC also acted as agent for appellant U.S. Life Title Insurance Company of Dallas in arranging for title insurance. Mrs. Kisich's declaration claims that she informed the escrow officer of the existence of the tax liens and even sent SCCTC a copy of an old title report showing the liens.

A Vice President of SCCTC declared under oath that it was the practice of the company to record any and all important communications, that he had carefully reviewed the files of the Kisich-Lambert sale, and that he found no record of any communication from Mrs. Kisich related to tax liens. This declaration is admissible under Rule 803(7) and, at least for the purposes of

summary judgment, raises a triable issue of fact.

The suggestion that the Lamberts or SCCTC could have discovered the tax liens in searching the record affords no defense to Kisich.

> The fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery (Rest. Torts, sec. 540; see cases cited in 12 Cal. Jur. 758, 759), and it is well established that he is not held to constructive notice of a public record which would reveal the true facts. (Rest..Torts, sec. 540(b); see cases cited in 12 Cal.Jur. 759, 764; Prosser, Torts 750, 751). The purpose of the recording acts is to afford protection not to those who make fraudulent misrepresentations but to *bona fide* purchasers for value.

*Seeger v. Odell,* 18 Cal.2d 409, 414, 115 P.2d 977.

The appellant title company succeeds to the rights of the Lamberts by subrogation (having paid the tax lien) and by assignment from the Lamberts.

The majority's view that § 523(a)(2) was never intended to be used by errant insurers to shift the risk of loss to the debtor is unsupported by authority or reason. I submit that the better view is that an assignee, voluntary or by operation of law, has standing to assert a claim for relief for nondischargeability except where Congress has denied that relief to assignees, as Congress has done in the case of alimony and child support, 11 U.S.C. § 523(a)(5)(A).

See *Firemen's Fund Insurance Company v. Covino,* Bkrtcy.M.D.Fla. (1981) 12 B.R. 876 (plaintiff-surety paid debtor's employer the amount embezzled by the debtor and was granted a non-dischargeable judgment). In that case, the court quotes with approval from *Hartford Accident & Indemnity Co. v. Flanagan,* (S.D.Ohio 1939) 28 F.Supp. 415 as follows:

> the act should be liberally construed so as to prevent the discharge in bankruptcy of a liability which would not exist but for the fraudulent conduct of the bankrupt .... If there has been no embezzlement or misappropriation there would have been no loss to the surety and no occasion for indemnity.