MINER, Circuit Judge:
 

 Export-Import Services, Inc. (“Import Services”) appeals from a judgment entered in the United States District Court for the Southern District of New York (Walker, J.) affirming an order of the bankruptcy court (Buschman, J.) denying Import Services’ priority claim against the bankrupt estate of International Engineers, Inc. (“Engineers”). Both the bankruptcy court and the district court denied the priority claim and classified Import Services as a general unsecured creditor. The sole issue on appeal is whether a customs broker’s voluntary payment of United States Customs duties on behalf of an importer effects an assignment of the government’s interest, thereby enabling the broker, in the importer’s subsequent Chapter VII proceedings, to claim the same priority to which the government would be entitled under section 64(a)(4) of the Bankruptcy Act of 1898, 11 U.S.C. § 104(a)(4) (1977),
 
 repealed by
 
 Bankruptcy Code of 1978, Pub.L. No. 95-598, 92 Stat. 2583 (for current governmental customs duty priority, see 11 U.S.C. § 507(a)(7)(F) (Supp.1985)). We find that there was no assignment of the government’s priority and we therefore affirm the decision of the district court.
 

 
 *79
 
 BACKGROUND
 

 The facts are undisputed. Appellant Import Services, a customs broker licensed by the United States Treasury Department, arranges for the lawful entry into the United States of cargo consigned to U.S. importers. To expedite the processing of certain shipments for its customers, Import Services, although not obligated to do so, will often advance customs duties owed by the importer, on the understanding that the importer will reimburse Import Services for all advances made to the government. Import Services also will prepare and process entry documents, obtain bonds, pay ocean freight, and perform other tasks to expedite entry.
 

 At various times between June 1972 and March 1973, Import Services acted as customs broker on behalf of its customer, Engineers. During that period, Import Services voluntarily paid customs duties totaling $21,407.97 on behalf of Engineers, the consignee and importer of record.
 

 Engineers filed a petition under Chapter VII of the Bankruptcy Act of 1898 on April 23, 1973 and was adjudged bankrupt on May 8, 1973. This adversary proceeding arose from Import Services’ assertion of a priority claim equal to the amount paid the U.S. Customs Service for duties owed. Import Services claimed that its discharge of Engineers’ statutory obligation to pay customs duties effected an assignment of the government’s claim for the duties, including the government’s priority under 11 U.S.C. § 104(a)(4). The bankruptcy court rejected Import Services’ claim of priority. The district court affirmed, relying primarily on
 
 Herman v. Taub, Hummel, & Schnall, Inc.,
 
 497 F.2d 1301 (2d Cir.),
 
 cert. denied,
 
 419 U.S. 885, 95 S.Ct. 153, 42 L.Ed.2d 125 (1974). Import Services appeals.
 

 DISCUSSION
 

 In
 
 Herman,
 
 a factually identical case, the broker argued that it was entitled to succeed to the government’s tax priority under the equitable doctrine of subrogation. We denied the broker’s claim, finding that 31 U.S.C. § 193 specifically barred subrogation to the government’s position except where the party stood as a surety on the bankrupt’s bond given to the United States. Because of its factual similarity, the district court ruled that
 
 Herman
 
 governed the case at bar even though it involved a subrogation theory, rather than a theory of assignment.
 

 Import Services does not contend, however, that it is subrogated to the government’s claim against Engineers because it discharged Engineers’ debt. Rather, Import Services argues that its voluntary payment of customs duties owed by Engineers, and the government’s acceptance of the payment, effected an assignment of the government’s right to the duties and, consequently, the government’s priority under the Bankruptcy Act. The issue before us, then, is whether the government assigned its priority under the Bankruptcy Act to Import Services. We hold that it did not, and affirm the decision of the district court.
 

 Priority in bankruptcy “is designed to assure payment, if possible, to certain classes of claims by requiring that they be first paid before others are satisfied.” 3 Collier’s on Bankruptcy 11507.02 (15th ed. 1986). By establishing the statutory order of payment, Congress sought to foster an equitable distribution of the estate to its creditors.
 

 The assignability of governmental priority is not addressed in the Act or in case law. We need not reach that issue, however, because we find no merit in Import Services’ claim that the government’s acceptance of customs payments on behalf of Engineers effected an assignment.
 

 “Assignment” typically is defined as
 

 [a] transfer or setting over of property, or of some right or interest therein, from one person to another, or the act by which one person transfers to another, or causes to vest in another, his right or property, or an interest therein....
 

 6A C.J.S.
 
 Assignments
 
 § 2(a), at 590-91 (1975). While it is true that “no particular mode, form, or phraseology is necessary to effect a valid assignment,”
 
 id.
 
 § 43b at 655,
 
 *80
 
 “it is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee.” Restatement (Second) of Contracts § 324. The requisite manifestation of a present intent to transfer the right may be accomplished in writing, orally or by conduct, but such manifestation must be sufficient to show a perfected transaction between the parties.
 
 Miller v. Wells Fargo Bank International Corp.,
 
 540 F.2d 548, 557-58 (2d Cir.1976).
 

 The only transaction between Import Services and the United States Customs Service was the voluntary payment of customs duties owed by Engineers. Appellant concedes that this transaction involved only Import Services’ issuance of a check to the Customs Service for the duties owed by Engineers, and the government’s acceptance of the proceeds of the check. On the basis of these facts alone, appellant asserts that “the government’s clear intent was to assign its claim to Import Services when Import Services made payment.” Appellant’s Brief at 16.
 

 We find that the government’s conduct in this transaction neither manifested nor implied any intention to assign its priority to Import Services. An assignment must be “a perfected transaction between the parties, intended to vest in the assignee a present right in the things assigned.”
 
 Miller,
 
 540 F.2d at 558. Appellant has not even claimed an intent on its part to acquire the government’s priority at the time of the transaction, much less an intent by the government to transfer that priority.
 

 Import Services argues alternatively that even if no intent to assign priority may fairly be implied from the conduct of the parties, the decision of the district court should nevertheless be reversed on the theory that Import Services assumed the government’s priority by means of an
 
 involuntary
 
 assignment. Appellant relies on
 
 In re Quakertown Shopping Center,
 
 366 F.2d 95 (3d Cir.1966), in which the Third Circuit held that a levy by the Internal Revenue Service against one of the priority creditors of a bankrupt’s estate entitled the IRS to the same priority enjoyed by the creditor against the estate. The court “deem[ed] the levy to be similar in effect to an assignment, albeit involuntary on the part of the creditor of the bankrupt.”
 
 Id.
 
 at 98.
 

 Because Import Services acquired its claimed priority by payment rather than by levy, there is an important distinction between
 
 Quakertown
 
 and the case at bar. Moreover, the levy referred to in
 
 Quaker-town
 
 is the summary non-judicial process by which the IRS exercises its power to seize property. 26 U.S.C. § 6331. This process is not available to a general unsecured creditor such as Import Services. The contention that there was an “involuntary assignment” of the government’s priority therefore is rejected.
 

 We note the concern expressed by
 
 ami-cus curiae
 
 that denying the broker the right to succeed to the government’s priority will result in longer delays in clearance of goods because customs brokers will be unwilling to risk advancing customs duties.
 
 Amicus
 
 also argues that important governmental objectives, such as expeditious collection of customs duties and a corresponding reduction of collection costs, would be served by “judicial recognition of the assignment of the government’s claim for duties to the broker.”
 
 Amicus
 
 Brief at 4. While we agree that important public policy objectives could be served through the assignment of the Customs Service’s priority to brokers who pay import duties, customs brokers are free to negotiate for such an assignment when the duties are paid. However, such an assignment must be the creation of two parties whose mutual intent to create an assignment is clearly expressed.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the judgment of the district court denying to appellant the priority claim of the United States Customs Service.