In re Robert W. BROMLEY, Debtor.

Gary HUTCHINSON, Plaintiff,

v.

Robert W. BROMLEY, Defendant.

Bankruptcy No. 89–5–0746–JS.
Adv. No. A89–0245–JS.

United States Bankruptcy Court,
D. Maryland.

April 12, 1991.

Stephen M. Hearne, Hearne & Spery, Salisbury, Md., for defendant.

Stephen F. Fruin, Whiteford, Taylor & Preston, Baltimore, Md., for plaintiff.

## MEMORANDUM OPINION DISMISSING COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

JAMES F. SCHNEIDER, Bankruptcy Judge.

### FINDINGS OF FACT

1. Robert Weldon Bromley filed a voluntary Chapter 11 bankruptcy petition in this court on March 9, 1989. On November 27, 1989, the case was converted to a liquidation proceeding under Chapter 7.

2. On July 20, 1989, Gary Hutchinson, the plaintiff, filed this complaint against the debtor to determine dischargeability of a debt owed to the plaintiff in the amount of $10,000.

3. The plaintiff's claim is listed in the debtor's schedules as a "private loan" in the amount of $10,000.

4. In a criminal prosecution instituted against the debtor in the United States District Court for the District of Maryland styled *U.S. v. Robert W. Bromley*, Case No. S–90–0013, the following statement of facts was agreed to by the debtor and the government:

> Between August 1985 and October 25, 1988, Robert W. Bromley was the branch manager at the Maryland State Bank in Princess Anne, Maryland, a financial institution with deposits insured by the Federal Deposit Insurance Corporation. As the branch manager, Robert W. Bromley exercised discretion on behalf of the bank in processing and approving bank loan applications for the Maryland State Bank. During his tenure at Maryland State Bank, Mr. Bromley had previously served as a security officer and was familiar with the requirements of filing currency transaction reports (CTRs).
>
> Mr. Bromley's yearly salary from the bank between 1985 and 1988 was as follows: *1985* —$30,000; *1986* —$32,213; *1987* —$34,642. Between the years 1985–1987, Mr. Bromley also operated a wood business. His joint federal tax returns for these three calendar years indicate the Bromleys joint income as follows:

1985—$42,702
1986—$53,156
1987—$42,499

Between January of 1985 through August 1988, Robert Bromley knowingly and willfully devised a scheme and artifice to defraud Maryland State Bank and to obtain monies and funds from them [sic] by means of false and fraudulent pretenses, representations and promises. During this period of time, Robert W. Bromley approached personal friends and/or bank customers to execute loan applications in their own name and turn over the proceeds to him. On some of these applications, Robert W. Bromley would falsify financial statements in the customer's name misrepresenting to the bank the actual financial status of the customer.

Typically, Mr. Bromley filled out the loan application and financial statement and signed the loan approval form as well as the check disbursing the loan proceeds to the alleged loan applicant. Mr. Bromley, knowing that the loan proceeds were for his own personal use, indicated on the loan approval sheets that the loan purpose was for the loan applicant. Mr. Bromley then had the loan applicant endorse the check, which was cashed for Mr. Bromley's own personal use.

Through this scheme, Mr. Bromley processed and approved for his own personal use the proceeds of 64 Maryland State Bank loans in the names of 27 different bank customers. The total amount of loan proceeds fraudulently obtained in this manner was between $200,000 and $500,000. Initially, in 1985 when the defendant began the scheme, the loans were taken out in the names of persons such as Douglas Jones, who worked for him in his wood business and Maggie Anderson, his housekeeper. In mid–1987, Mr. Bromley began taking out larger loans and he therefore began using the names of more creditworthy individuals.

Specifically, on March 21, 1988, Robert W. Bromley approved a loan application in the name of Robert L. Cheseldine, Sr. in the amount of $25,000. Mr. Bromley listed on the loan approval form that the loan was for the loan applicant's personal use. Mr. Bromley did this knowing that the loan proceeds were to be used for his own personal benefit. By Robert Bromley's direction, the loan proceeds check was endorsed by Mr. Cheseldine who issued a deposit slip in the amount of $25,000 less a $9,000 cash withdrawal, thereby depositing a net amount of $16,000 to his account and furnishing the $9,000 cash to Bromley. On March 22, 1988, Robert Cheseldine issued check no. 886 in the amount of $9,000 payable to cash and provided Mr. Bromley with these funds. The following day on March 23, 1988, Mr. Cheseldine issued check no. 888 payable to cash for the remaining $7,000 he provided to Mr. Bromley. Mr. Bromley's structuring of the transaction in this manner was done to avoid detection of his scheme and resulted in the violation of the CTR reporting requirements.

On several occasions in 1988 when Mr. Bromley obtained loan proceeds in the names of Richard H. Sheppard, Jr. and Frank Stone, he directed the bank customer to place the loan proceeds underneath a car seat to be retrieved by Mr. Bromley at a later time.

In November 1988, the defendant resigned from his position at the bank. Subsequent to this Mr. Bromley met with Michael K. Bloxham, the president of Maryland State Bank and during this meeting with counsel, the defendant admitted to Mr. Bloxham that he had approved numerous loans in the names of other individuals knowing that the loans were actually for his own personal benefit. On February 6, 1989, [sic] the defendant filed for bankruptcy. In connection with the bankruptcy proceeding, Mr. Bromley filed a statement of financial affairs in which he listed as creditors many of the loans set forth in the indictment, as well as others.

An analysis of Mr. Bromley's Second National Bank account which was closed on March 25, 1988 reveals that in 1987 he

had cash deposits of $125,602 and withdrawals of $129,203. The total deposits in this account for 1987 were $270,062.

The bank is attempting to collect the outstanding balances from the nominee borrowers.

Stipulation of Facts, Plaintiff's Exhibit No. 3.

5. Mr. Bromley pleaded guilty to one count of bank fraud and one count of income tax evasion and was sentenced by U.S. District Judge Frederic N. Smalkin to a 27-month term which is currently being served in the Petersburg Federal Correctional Institution in Petersburg, Virginia.

6. The instant complaint came on for trial on January 17, 1991. The debtor, who was not present, was represented by counsel.

7. At the hearing, the plaintiff, Gary Hutchinson, testified that in April, 1984, he went to see Mr. Bromley, who was then a bank officer at the Maryland State Bank, regarding a loan. At that time, according to Mr. Hutchinson, Mr. Bromley said to him: "I need to borrow $5,000. The gentleman I deal with at [my regular bank] is out of town, but I need the money today and I can't borrow it here because this institution can't loan to an officer." Mr. Bromley asked for a $5,000 loan from Mr. Hutchinson. The witness testified that "I was a little bit shocked, but I didn't have an answer." It was only to be a 30-day loan, after which Mr. Bromley allegedly promised to repay the $5,000. Mr. Hutchinson agreed, and gave Mr. Bromley $5,000 of a $15,000 loan Mr. Hutchinson borrowed from the Bank with Mr. Bromley's approval. There followed another loan of $5,000 to Mr. Bromley out of $10,000 which Mr. Hutchinson borrowed from the Bank on Mr. Bromley's authorization. In October, 1985, Mr. Hutchinson was again approached by Mr. Bromley who prevailed upon Mr. Hutchinson to borrow another $5,000 from the Bank, in reality to be loaned to Mr. Bromley in its entirety for his benefit. By this time, Mr. Hutchinson had given Mr. Bromley a total of $15,000 which had been borrowed from the Bank, but Mr. Bromley failed to reimburse him for the interest he was being charged on the loan, as Mr. Bromley had promised to do. Approximately two years passed before Mr. Bromley paid back $5,000 of the $15,000 plus interest he owed to Mr. Hutchinson. Mr. Bromley was in the lumber business and often complained that he was in a cash bind. Mr. Hutchinson testified that he "felt pressured" to go along with Mr. Bromley's scheme. Finally, the Bank found out about Mr. Bromley's artifices and discharged him. Maryland State Bank demanded payment from Mr. Hutchinson for the $10,000 which he had borrowed and given to Mr. Bromley. In January, 1989, Mr. Hutchinson obtained a confessed judgment note from Mr. Bromley in the amount of $10,000, but Mr. Bromley has never paid him the $10,000. Mr. Hutchinson testified that "I would never have loaned Mr. Bromley the money if he had not been a bank loan officer and I had not needed to borrow money from the Bank." On cross-examination, Mr. Hutchinson testified that he thought that what he had done for Mr. Bromley was improper but that he did not feel that he had a choice. "I couldn't risk not getting the loan. I didn't know how to handle it."

8. Counsel for the debtor called no witnesses and submitted no evidence.

9. The Court dismissed the complaint at the conclusion of the plaintiff's case with prejudice pursuant to F.R.Civ.P. Rule 41(b).

CONCLUSIONS OF LAW

1. The complaint fails to state a cause of action for which relief can be granted because the Bank, not the plaintiff, was victimized by the debtor, Mr. Bromley.

2. The plaintiff aided and abetted Mr. Bromley in defrauding the Bank out of its money by willingly participating in Mr. Bromley's scheme. Mr. Hutchinson did so without coercion, duress or threat. Because of this, Mr. Hutchinson is equally culpable with Mr. Bromley for the Bank's loss.

3. As an employee of the Bank holding a position of trust, the debtor was acting at all times in a fiduciary capacity to the Bank and not to the plaintiff.

4. No fraud was perpetrated upon the plaintiff by the debtor. The plaintiff at all times was in full possession of the knowl-

edge of Mr. Bromley's wrongdoing and did nothing to stop it by either going to the authorities or to the managers of the Bank. He has no standing to bring a nondischargeability complaint against another with whom he participated in a fraud against a third party.

5. The plaintiff is not entitled to relief from a court of equity in the form of an order denying the dischargeability of debt because he has not come into court with clean hands.

6. Counsel for the plaintiff has cited two cases which he says stand for the proposition that Mr. Hutchinson is entitled to relief from Mr. Bromley because of Mr. Hutchinson's liability to the Bank. The cases of *In re Covino*, 12 B.R. 876 (Bankr. M.D.Fla.1981) and *Hartford Accident & Indemnity Co. v. Flanagan*, 28 F.Supp. 415 (S.D.Ohio 1939) are not applicable to the present case because they held nondischargeable the obligations of a debtor to a surety which paid the debtor's employer for monies which the debtor had embezzled. In each case, the surety was innocent of any wrongdoing and merely stood in the shoes of the bank in asserting its claim against the debtor for his defalcation. Such is not the case here. The plaintiff is not the Bank's surety. He is liable to the Bank as Mr. Bromley's accessory.

7. The plaintiff benefitted from his complicity in the debtor's scheme by obtaining the debtor's authorization for loans from the Bank. This was the illegal *quid pro quo* given to the plaintiff in exchange for his loans to the debtor. The plaintiff has not shown that the Bank would have loaned him the funds he borrowed in the absence of the debtor's fraudulent scheme in which he participated. To allow him to recover on this complaint would enable the plaintiff to profit from his complicity in the debtor's fraud.

For all the foregoing reasons, the complaint in this case will be dismissed with prejudice.

ORDER ACCORDINGLY.